In the Matter of the Probate of the Will of JOSEPH THORNE, Deceased.

MAY THORNE BRANTINGHAM, Appellant, *v.* EUNICE E. HUFF, Proponent, Respondent.

1. ADOPTION OF CHILDREN. The adoption of children was unknown to the common law of England, and exists in this country only by virtue of statute.

2. STATUTE LEGALIZING ADOPTION — L. 1873, CH. 830 — CONSTRUCTION OF SAVING CLAUSE. The saving clause in the first general statutory provision in this state for the adoption of children (L. 1873, ch. 830, § 13),

to the effect that nothing therein contained should prevent the adoption of any child theretofore made according to any method practiced in this state from having the effect of an adoption thereunder, had reference only to those forms of adoption theretofore existing by virtue of special statutory enactments contained in the charters of charitable societies, and was not intended to legalize private agreements executed without authority of law and containing no safeguards as to the transmission of property.

*Matter of Thorne,* 23 App. Div. 624, affirmed.

(Argued January 24, 1898 ; decided March 1, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 17, 1897, affirming an order of the Surrogate's Court of Westchester county dismissing the petition of the appellant for leave to intervene and file objections to the probate of the will of Joseph Thorne, deceased.

The facts, so far as material, are stated in the opinion.

*Alex. Thain* for appellant. The adoption in the case at bar was lawful, and has the effect of an adoption under chapter 272, Laws of 1896. (L. 1873, ch. 830, § 13; *Carroll* v. *Collins,* 6 App. Div. 106; *Matter of Beach,* 154 N. Y. 242; *Matter of Snook,* 2 Hilt. 566; Penal Code, § 451; *Matthews* v. *Matthews,* 154 N. Y. 288; *Williams* v. *Hutchinson,* 3 N. Y. 318.) Lawful adoption, *per se,* conferred no property rights upon the child so adopted. (4 Kent's Comm. 382, 385, 386.) Adoptions were recognized in this state long before the passage of any act either providing for or legalizing them. (*Williams* v. *Hutchinson,* 3 N. Y. 312; *Sharp* v. *Cropsey,* 11 Barb. 224.) The indenture, although apparently in terms limiting the adoption until the child became eighteen years of age, in fact, created, and was intended to establish, the relation of parent and child between the parties. (*Simmons* v. *Burrell,* 8 Misc. Rep. 388.) A child adopted before the passage of the statute conferring property rights takes under a statute granting such rights passed after adoption. (*Dodin* v. *Dodin,* 16 App. Div. 42.) The appellant should have been allowed to intervene. (*Matter of Gregory,* 13 Misc. Rep. 363.)

*W. P. Prentice* for respondent. The appellant has no
right of intervention in this matter, and was never an adopted
child of the testator. (*Carroll* v. *Collins*, 6 App. Div. 106;
*Hill* v. *Nye*, 17 Hun, 457; *McMannis* v. *Butler*, 49 Barb.
176; *Wood* v. *Oakley*, 11 Paige, 400; *Morrison* v. *Sessions*,
70 Mich. 297; *Ballard* v. *Ward*, 89 Penn. St. 358; *Abney*
v. *De Loach*, 84 Ala. 393; Code Civ. Pro. § 2556.) There is
no force in the evidence sought to be introduced by the
appellant by witness Walsh, of what he characterizes as
attempts at adoption prior to December 21, 1863, shown by
the books of the commissioners of charities and corrections.
(*Carroll* v. *Collins*, 6 App. Div. 110; *Williams* v. *Hutchin-
son*, 3 N. Y. 312; *Dodin* v. *Dodin*, 16 App. Div. 42; L.
1887, ch. 703.)

BARTLETT, J. The petitioner, May Thorne Brantingham,
the appellant, seeks to intervene in the matter of the probate
of the will of Joseph Thorne, deceased, on the ground that
she is his lawfully adopted child and interested in the distri-
bution of his estate. It is found by the Surrogate's Court of
Westchester county that on the 21st day of December, 1863,
at the city of New York, Joseph Thorne, and Elizabeth, his
wife, attempted to adopt the petitioner when she was one
year and eleven months old (her father being dead) with the
consent of her mother and the superintendent of the out-door
poor, acting on behalf of the commissioners of public charities
and correction of the city of New York.

This act of attempted adoption is established by the pro-
duction of a written indenture or agreement duly executed, to
continue until the infant attained the age of eighteen years.

It is further found that, in pursuance of this agreement,
the petitioner became a member of the household of Joseph
Thorne and Elizabeth, his wife, and that they maintained the
relation of foster parents toward her down to the time of their
death in the year 1897.

These findings were followed by the legal conclusion that
the relation of adopted child and foster parents was not estab-

lished by this agreement, for the reason that, at the time of its execution, there was no statute in this state authorizing such an adoption. The petition was dismissed.

The Appellate Division affirmed the order of the Surrogate's Court.

The adoption of children and strangers to the blood was known to the Athenians and Spartans, the Romans and ancient Germans.

This subject is discussed by many writers. The provisions of the Roman law, as modified by Justinian, were transmitted to the modern nations of Europe, and appear in the Code Civil of France and in the Spanish law. (31 Cent. L. J. 66.)

This form of domestic relation was, however, unknown to the common law of England, and exists in this country only by virtue of statute. (*Morrison* v. *Sessions' Estate*, 70 Mich. 297–305; *Ballard* v. *Ward*, 89 Pa. St. 358; *Abney* v. *De Loach*, 84 Ala. 393; *Carroll* v. *Collins*, 6 App. Div. 106.)

The first general statutory provision in this state is contained in the Laws of 1873 (Ch. 830), entitled "An act to legalize the adoption of minor children by adult persons." This act, after providing for adoption in detail, contains in its last section this saving clause: "Nothing herein contained shall prevent proof of the adoption of any child, heretofore made according to any method practiced in this state, from being received in evidence, nor such an adoption from having the effect of an adoption hereunder."

The 10th section of the act provides that the child should have all the rights and be subject to all the duties of the relation of parent and child, except the rights of inheritance. Subsequently this section, by Laws of 1887, chapter 703, was amended so as to confer the rights of inheritance. These statutory provisions remained in force until the enactment of the Domestic Relations Law (Ch. 272, Laws 1896, sections 60 to 68).

These, in brief, are the general statutory provisions in this state in the matter of adopting minor children, and it is obvious that the attempted adoption of the petitioner in 1863 was

without legal sanction, unless it be true, as is contended by counsel for the appellant, that the saving clause already quoted from the act of 1873 was intended to legalize all private agreements for adoption previously executed. While there has been some diversity of opinion in the lower courts as to the precise meaning of this clause, we think the only construction permissible is that it refers to those forms of adoption theretofore existing by virtue of special statutory enactments contained in the charters of charitable societies that received destitute and homeless children, and whose officers were permitted to execute agreements of adoption on their behalf with suitable persons willing to assume the obligations of parents. This is illustrated by the act to incorporate the American Female Guardian Society, a well-known charitable institution in the city of New York. (Ch. 244, Laws of 1849.) Section 6 of this act provides in substance that where a child is surrendered to the management of the society, it shall be lawful for the board of managers, in their discretion, to place such child by adoption or service in some suitable employment and with some proper person or persons.

It is obvious that the legislature did not have in contemplation the legalizing of private agreements executed without authority of law and containing no safeguards or restrictions of any kind as to the transmission of property. Any such construction of the saving clause in the act of 1873 might seriously affect the titles to real estate and introduce many elements of danger.

It follows that the agreement in this case, relied on to create the relation of foster parents and adopted child, worked no such result, and that the order appealed from should be affirmed, with costs.

All concur, except Gray, J., absent.

Order affirmed.