(82 Misc. Rep. 346.)

### In re ZIEGLER.

(Surrogate's Court, New York County. October, 1913.)

1. ADOPTION (§ 3*)—NATURE OF PROCEEDING—STATUTORY ORIGIN.
     The adoption of children and their rights of inheritance depend wholly upon statute, as the common law did not recognize adoption.
     [Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 1, 2; Dec. Dig. § 3.*]

2. ADOPTION (§ 1*)—NATURE OF PROCEEDING—NOT CONTRACTUAL—"STATUS."
     The adoption of children, their rights of inheritance, and the abrogation of the relation are governed by the law of status, and not of contracts; such "status" is a condition in life determined by law and not by act of the parties; and its rights and its abrogation depend on authority

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the state, and not upon the contract or consent of the parties, except as required by statute.

[Ed. Note.—For other cases, see Adoption,, Cent. Dig. § 15; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 7, pp. 6646, 6647.]

3. ADOPTION (§ 3*) — STATUTORY PROVISIONS — CONSTRUCTION — SUBSTANTIAL COMPLIANCE.

Statutes authorizing the adoption of children and the abrogation of the relation, like other statutes in derogation of the common law, are to be strictly construed, and the mode prescribed must be substantially complied with.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 1, 2; Dec. Dig. § 3.*]

4. ADOPTION (§ 16*)—ABROGATION OF RELATION—JURISDICTION OF SURROGATE COURT.

Proceedings for the abrogation of an adoption are distinct from the adoption proceedings, and the power given the Surrogate Court, under Laws 1896, c. 272, to abrogate adoptions may be exercised notwithstanding the adoption was made in a proceeding before a justice of the Supreme Court.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 27, 28; Dec. Dig. § 16.*]

5. COURTS (§ 472*)—CONCURRENT JURISDICTION—IN GENERAL.

Different courts may exercise concurrent jurisdiction relative to the same matters, where the Constitution or statutes so provide.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 442, 451, 465, 619, 1199–1202, 1204–1224, 1247–1259; Dec. Dig. § 472.*]

6. ADOPTION (§ 16*)—REVOCATION—CONSENT OF PARTIES—MOTHER DIVORCED FOR ADULTERY.

Under Laws 1896, c. 272, § 66, providing that to abrogate an adoption the parties whose consent to an original adoption would be necessary must appear and give their consent, the consent of the mother, who had been divorced for adultery, was unnecessary, as Laws 1896, c. 272, § 61 (Consol. Laws 1909, c. 14, § 111), does not require the consent to adoption of a parent divorced for adultery.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 27, 28; Dec. Dig. § 16.*]

7. ADOPTION (§ 2*)—CONSTITUTIONAL LAW (§ 145*)—OBLIGATION OF CONTRACTS—ABROGATION OF ADOPTION OF CHILD.

The inhibition against laws impairing the obligation of contracts has no reference to adoption, or to abrogation of the relation, as such matters are not contractual.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. § 2; Dec. Dig. § 2;* Constitutional Law, Cent. Dig. §§ 279–281, 285, 414, 417, 421–428; Dec. Dig. § 145.*]

Petition by Florence Louise Ziegler to set aside the abrogation of her adoption by William Ziegler and Electa M. Ziegler. Denied.

Patton & Patton, of New York City (James D. Wallace and Harry S. McCartney, of counsel), for petitioner.

Swan & Moore and William J. Underwood, all of New York City (John M. Bowers, of New York City, of counsel), opposed.

FOWLER, S. This is a proceeding to vacate and set aside, and to decree to be null and void and without force and effect, certain abrogation proceedings taken before the late Surrogate Abner C. Thomas,

one of the surrogates of this county, and the consent of the said surrogate to the abrogation of the adoption of the petitioner.

The course of the adoption and abrogation proceedings, in so far as it is necessary to consider them, is as follows: On January 30, 1896, Hon. Roger A. Pryor, then one of the justices of·the Supreme Court of the state of New York, duly made an order whereby Florence Louise Brandt and her brother William Conrad Brandt were legally adopted by the late William Ziegler and Electa M. Ziegler, his wife. The said Florence L. Brandt and William C. Brandt were then both under 12 years of age, and were children of George Washington Brandt and Anna Hutting Brandt, his wife, who were both nonresidents of this state. William and Electa M. Ziegler were residents of the city, county, and state·of New York. George Washington Brandt was the half-brother of the late William Ziegler, who was childless, and a man of large estate. The order of adoption was based upon an agreement duly executed by the said William and Electa M. Ziegler before Mr. Justice Pryor on the 30th day of January, 1896, and the consent of the said George Washington Brandt and Anna H. Brandt, duly executed by George Washington Brandt on the 22d day of April, 1895, in Chicago, and by Anna H. Brandt on the 18th day of February, 1895, in Brussels, in the Kingdom of Belgium.

The abrogation of such adoption was based upon an agreement whereby the several parties thereto mutually consented, covenanted, and agreed to and with each other that the aforesaid original adoption be abrogated as to Florence Louise Brandt; that William Ziegler, Electa M. Ziegler and Florence Louise Ziegler relinquished each to the other the relation of parent and child and all rights acquired by said adoption, and which may have arisen by operation of law or otherwise by reason of said adoption; that George W. Brandt reassume the relation of parent and father to Florence Louise Ziegler; that said adoption be abrogated, pursuant to law and the statute, and that said Florence Louise Ziegler reassume her original name, Florence Louise Brandt, and that George W. Brandt reassume the relation of father to said minor. This instrument was duly executed before Hon. Abner C. Thomas, surrogate, on the 31st day of March, 1902, by William Ziegler, Electa M. Ziegler, George W. Brandt, and Florence Louise Ziegler. Surrogate Thomas made upon said agreement the following indorsement:

"I, Abner C. Thomas, one of the surrogates of the county of New York, do hereby consent to the abrogation of the adoption of Florence Louise Ziegler by William Ziegler and Electa M. Ziegler, New York, March 31, 1902. Abner C. Thomas, Surrogate."

At the time this abrogation took place Florence Louise Ziegler was 16 years of age. On the 30th day of March, 1895, George Washington Brandt had obtained a decree of divorce from Anna H. Brandt on the ground of her adultery, which decree provided that said George Washington Brandt should have the care, custody, control, and education of the children, Florence Louise Brandt and William Conrad Brandt, without any interference on the part of the defendant, the mother by nature of the said Florence Louise. William Ziegler has since died.

This present proceeding to annul the abrogation of the adoption of Florence Louise was instituted by the filing of a petition by said Florence Louise, who is now over 21 years of age, and the citation of Electa M. Ziegler, William Ziegler, Jr., George Washington Brandt, Anna H. Haney, formerly Anna H. Brandt, the mother by nature of petitioner, and the executors of the estate of William Ziegler, deceased.

The late William Ziegler died testate, seised and possessed of a very great estate. Had he died insolvent or penniless it may be taken for granted that the present proceeding for the annulment of the abrogation of adoption would not have been instituted. As it is, the present proceeding is supported and opposed by counsel for all the parties with great thoroughness and learning. If, however, the proceeding is legally or well founded, its ulterior motive, whatever it may be, is inconsequential.

The petitioner claims, in substance, that the abrogation of her adoption is invalid for various reasons, which I shall proceed briefly to consider. It is asserted in behalf of petitioner that the adoption, having been once effected, was in the nature of a contract between the parents by nature and the adoptive parents, and even the child itself; this being so, that it required the consent of the mother by nature to abrogate such contract of adoption, notwithstanding that the father by nature had, before the act of abrogation, divorced the petitioner's mother by nature and had himself consented to the abrogation in question. Such a contention requires in limine our consideration of the relation which acts of adoption and emancipation from adoption now occupy in the law of the land. I shall first consider whether such acts are related in fact to our law of contract or to the law regulating status. If they are governed by the law of contract, or even by analogies taken out of the law of contract, it is claimed that the proceeding to abrogate the adoption required the consent of the petitioner's mother by nature, she having been a party to the act of adoption. If the status of an adopted child is fixed by the state and not by the act of the parties, other principles will, I think, govern or influence the solution of the present application.

[1] It is well recognized that the common law contained no provision for the adoption of children. From Bracton to Blackstone there is no recognition by the common law of such an artificial augmentation of the family relation or of a succession by adopted children. In Anglo-Saxon law it was otherwise; but the practice of the Saxons disappeared speedily in England, and Kent's Commentaries on American Law disclose that the common law, received and in force in this country, took no notice of adoption as a legal act. Adoption of children and the rights of intestate succession by adopted children are due in this state to statute. Matter of Thorne, 155 N. Y. 140, 143, 49 N. E. 661; Matter of McRae, 189 N. Y. 142, 81 N. E. 956, 12 Ann. Cas. 505. The first statute of this state permitting or regulating the adoption of children was chapter 830, Laws of 1873, which was amended by chapter 703 of the Laws of 1887 so as to confer rights of succession in the event that the adoptive parent died intestate. The substance of these and other similar acts will now be found consolidated in the "Domestic Relations Law." The artificial augmentation of the

legal institution known in law as the "family" is now reasonably complete in the state of New York, and is fully recognized by the statutes or organic acts of the state. Without such acts the common-law or contract does not sanction an attempt to create the relation of parent and child by adoption.

[2] It is the state, and not the parents by nature and by adoption, which creates the new status of a child by adoption. The rights and obligations of the adoptive parent and of the adopted child are due wholly to the statute of the state. The prerequisites for adoption are subordinate to the authorization or imprimatur of the state. When the state has sanctioned the adoption, the new status of parent and child is ipso facto complete. It seems reasonable to assume that a status created by the state may be altered or abrogated by the state only. Whenever a new status is created by the state the old jurisprudence affords only analogies; it is rarely decisive in such matters as this now before me. Counsel for petitioner are very explicit on this point, and frankly state in their brief "that the issues presented by this record logically and directly lead into practically virgin territory in the domain of jurisprudence."

In the early Roman law the continuation of the family invested adoption with great importance. Consequently we find the law concerning adoption thoroughly worked out in that system. The briefs of counsel in this matter before me make good use of analogies offered by the Roman law, and their arguments are profound and instructive. That adoption was treated in the post-Justinianian law as an act regulating status and not as one dependent on their law concerned with obligations is, I think, to be conceded. In other words, rights of property with the Romans followed the particular status of a child by adoption, and were not regarded as attaching to the child by reason of any mere agreement to adopt him. The civilians recognized that it was the Roman law which regulated the rights of the adopted child. Gaius, for example, states very clearly that adoption takes place in two ways: By the people's authority (populi auctoritate) and by the power (imperium) of the magistrate, the prætor for example (G. 1, 98). Here, obviously, there was no room for an application of the Roman law regulating obligations or contract. But I recall that it was acutely said by an English writer of some distinction that the later Roman law regarded the family from the legal rather than the moral point of view. The thesis of this writer was that the common law, in this particular, developed on moral and not on legal conceptions. It may be so. In any event, I fear that analogies drawn from Roman law are with us to be applied with caution when they concern our family law. I have not therefore attempted to follow counsel in all the intricacies of Roman analogies.

But it is apparent to me that whenever adoption is recognized by a state, the relation of parent and child comes to be created, as in Roman law, in two ways, by birth and by adoption, and that one is made the legal equivalent of the other. There is no doubt in my mind that adoption properly belongs to our law concerned with status, as a relation of parent and child cannot be effected by contract alone. In Roman law arrogation and adoption certainly belonged to the public law, jus pub-

licum, since they affected status and involved an alteration in the composition of the family (Ortolan, 581). Savigny, in his great work on Jural Relations, treats adoption and arrogation as affecting status. Status can be determined only by the state and not by agreement of the parties. Let me define what is meant by "status." Whenever a condition in life is determined by law, and not by act of the parties, it is correctly denominated a "status" in jurisprudence, and even in the terminology of the common law itself, as I find from adjudged cases. While the law of status tends to become less and less important in modern jurisprudence, it remains of significance in some instances. Status, recognized by law, is the basis of rights. The status of an adopted child, for example, is the basis of his legal rights against his adoptive parents. When his rights are invaded it is not the contract of adoption he resorts to, but to his status as the child of his adopted father. So the duties and rights of the adoptive father are determined by the law of status and not by contract. Burnes v. Burnes, 137 Fed. 781, 797, 70 C. C. A. 357.

Under all systems of law which recognize adoption of children, emancipation from parental power and control, or an abrogation of the artificial relation, is also recognized and is treated as an act by operation of law and not as an act of the parties to the adoption. In other words, the state alone can determine when the relation of parent and child ceases. If these very general principles which I have announced are accurate in our jurisprudence, the force of the petitioner's contention that the consent of her mother by nature to the act of abrogation was inherently necessary will be perceived to be somewhat diminished.

[3] That there must be a substantial compliance with statutes authorizing the adoption of children or the abrogation of such adoption I have no doubt. Statutes in derogation of the common law or statutes altering a status recognized by the common law are always to be strictly construed. So when a statute directs the mode in which a legal act shall be effected there must always be a substantial compliance shown. These are common principles which need no citation of authority. It is complained by petitioner that her mother by nature failed to consent, not to the act of adoption which took away the child of such mother, but to the act annulling or abrogating such adoption and restoring the child to the original parental control. This is no hardship on the mother by nature. In this instance it is essential to note that the mother by nature had after the act of adoption, but before the act of abrogation, been divorced from the natural father of the child. The decree of divorce purports to deprive such mother by nature of all future parental control or authority. Ipso facto, to some extent, her right to oppose or consent to the act of abrogation in question had ceased and become invested solely in the father by nature. This inference both the decree of divorce and the statute of this state, to which I shall refer, seem to support. It is now claimed in this proceeding in behalf of petitioner that the consent of her mother by nature was essential to the act of abrogation, notwithstanding that such mother was divorced and deprived of parental control and authority by the decree of a competent court.

[4, 5] It is also claimed by petitioner that the Surrogate's Court had no power or jurisdiction in the proceeding to abrogate an adoption, because such adoption was made or declared in a proceeding taken before a justice of the Supreme Court of the state of New York. Of the jurisdiction of this court I entertain no doubt. The proceeding to abrogate an adoption was a new or independent one, quite distinct from the proceeding to adopt. Separate courts may be concurrently invested with similar jurisdictions if the statutes or Constitution so provide, and the law did so provide. In such proceedings either court is the minister of the state.

The first law of this state giving the power of adoption and abrogation of adoptions to courts was chapter 830 of the Laws of 1873, which conferred the power on the county judge of the county in which the person adopting resided. The judges of the Court of Common Pleas rightfully exercised the jurisdiction conferred upon the county judges. Matter of Morgan, 56 N. Y. 629. The Constitution of 1894 abolished the Court of Common Pleas from and after January 1, 1896. Article 6, § 5, however, provided that "the jurisdiction now exercised by the several courts hereby abolished shall be vested in the Supreme Court." Therefore the order of adoption made on January 30, 1896, by Hon. Roger A. Pryor was valid and legal. (This is not disputed by any of the parties to this proceeding.) The act giving this power to the county judge was repealed by chapter 272 of the Laws of 1896, which went into effect October 1, 1896, and which conferred the power of allowing and confirming an adoption and the consenting to an abrogation of adoption on the county judge or the surrogate of the county where the foster parent or parents resided, thus in fact continuing the power in the county judges and for the first time conferring it upon the surrogates. This act by its general terms, and by not reserving to the Supreme Court the power of abrogation, conferred the power on the surrogates and county judges to abrogate adoptions made by the Supreme Court. It was competent for the Legislature to pass this law, and this court will not undertake to say that it had not the constitutional power to do so.

[6] The consent of Anna H. Haney, the divorced wife of George Washington Brandt, and the mother by nature of petitioner, was unnecessary to make the act of abrogation valid, nor was she a necessary party to the proceeding taken to effect the abrogation of the adoption in question. When the petitioner was adopted on January 30, 1896, the adoption statute then in force in New York was chapter 830 of the Laws of 1873. Section 8 of this law provided as follows:

"Section 8. The person adopting a child, and the child adopted, and the other persons whose consent is necessary, shall appear before the county judge of the county in which the person adopting resides, and the necessary consent shall thereupon be signed, and an agreement be executed by the person adopting, to the effect that the child shall be adopted and treated, in all respects, as his own lawful child should be treated."

The following section provided that the judge, if satisfied, should make an order directing that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting, and that such child shall take the name of the person adopting, and that

the two shall thenceforth sustain towards each other the legal relation of parent and child.　Section 13 provided as follows: ·

"But no child shall hereafter be adopted except under the provisions of this act, nor shall any child that has been adopted be deprived of the rights of adoption, except upon a proceeding for that purpose, with the like sanction and consent as is required for an act of adoption under the eighth section hereof; and any agreement and consent in respect to such adoption, or abrogation thereof hereafter to be made, shall be in writing, signed by such county judge or a judge of the Supreme Court," etc.

Chapter 830 of the Laws of 1873 was amended by chapter 703 of the Laws of 1887, which act amended section 10 of the Law of 1873 in respect to the right of inheritance, etc.　In 1888 an amendment was made to section 8 of the act of 1873 dispensing with the appearance of the parents before the county judge when they did not reside in the same county as the foster parents.　Laws 1888, c. 485.　The Law of 1873 was repealed by chapter 272 of the Laws of 1896, which law went into effect on October 1, 1896, and conferred the power on County Courts and the Surrogate's Courts of making orders in adoption and abrogation proceedings.　This latter act, known as the "Domestic Relations Law," is now incorporated in the Consolidated Laws as article 7 of chapter 19 of the Laws of 1909.　Section 61 of this last act (of 1896), which enumerated the persons whose consent was necessary to an adoption, provided in subdivision 3 thereof that: .

"The consent of a· parent who had abandoned the child, or is deprived of civil rights, or divorced because of his or her adultery or cruelty, or adjudged to be insane, or to be an habitual drunkard, or judicially deprived of the custody of the child on account of cruelty or neglect, is unnecessary."

Section 62, which is entitled Requisites of Voluntary Adoption, in subdivision 1 provides:

"The foster parent or parents, the minor and all the persons whose consent is necessary under the last section, must appear before the county judge or the surrogate of the county where the foster parent or parents reside, and be examined by such judge or surrogate, except as provided by the next subdivision."

The exception referred to therein was a provision that the attendance before the county judge or surrogate was not necessary where a parent or person or institution having the legal custody of the minor resided or was located in some other state or county.

Section 66 of chapter 272, Laws of 1896, the law in force at the time of the "abrogation" proceeding, provided that only the persons whose consent would be necessary to an original adoption must appear before the county judge or surrogate, and they must execute their consent and agreement on an application for an abrogation of adoption.　Therefore it follows that the mother who had been divorced because of her adultery, not being necessarily present, her consent was not necessary.　Either this is a casus omissus or else an inexact manner in the section of the statute providing that the parents shall agree to reassume such relation.　It was obviously intended by the lawmaking power that where there was only one person whose consent was necessary, only that person should agree to reassume the relation of parent.　At least this is a rational construction of the statute, and to

my mind no other construction of even an ambiguous statute should ever be made. That the consent of the mother by nature to the act of abrogation was not essential is, I think, supported by the implications of the opinion rendered in Matter of MacRae, 189 N. Y. 142, 81 N. E. 956, 12 Ann. Cas. 505.

[7] Before concluding, let me advert generally to the substance of a position argued by petitioner's counsel with great emphasis, viz., that the adoption being matter of contract between the parents by nature and adoption, the Legislature had no power to enact a law which impairs such contract without the consent of all the parties to the original adoption. The federal inhibition against laws impairing the validity of contracts had, in my judgment, no reference to adoptions or the abrogation of adoptions. I have endeavored to show that adoption is an act of the state itself, and not a contract between the natural parents and the adoptive parents. A status created by the state may be altered by the state in any way it sees fit. In my judgment the consent of the parent, either adoptive or by nature, is not by our jurisprudence indispensable to an act abrogating an adoption, unless the state itself makes such consent an indispensable prerequisite. This the state has not in this instance done.

The application of the petitioner should be denied. Settle decree accordingly.