THERESA KEMPE AND OTHERS v. JOHN W. HACK AND
SECURITY LOAN AND TRUST COMPANY, AS
SPECIAL ADMINISTRATOR OF ESTATE
OF JOHN HACK, DECEASED.[1]

December 7, 1923.

No. 23,724.

**Effect of special law for adoption of child.**

Chapter 59, Sp. Laws 1863, in addition to changing the name of
Ann Jane Clark to Catharine Hack, provided, also: "That said Cathar-
ine Hack is hereby declared to be the daughter and heir-at-law of
John Hack * * * and she shall enjoy all the rights and privileges,
and be subject to the same care and guardianship as if she had been
the daughter of said John Hack, born in lawful wedlock." *Held*,
following Odenbreit v. Utheim, 131 Minn. 56, that the law, assuming
it to be a contract for adoption, performed by the adopted child, gave
her the same right of inheritance, and no more, that a natural and
legitimate child would have.

Action in the district court for Goodhue county to enforce specific
performance of a contract. The case was tried before Converse, J.,
who made amended findings and ordered judgment in favor of de-
fendants dismissing the action. From an order denying their mo-
tion for amended and additional findings of fact and amended con-
clusions of law, and for a new trial, plaintiffs appealed. Affirmed.

*A. J. Rockne* and *P. B. Green*, for appellants.

*Frank M. Wilson, Charles P. Hall* and *Plato E. Sargent*, for re-
spondent Hack.

STONE, J.

Appellants, to be hereinafter referred to as plaintiffs, by this
action seek to compel the specific performance of a contract claimed
to have been made between their mother, Catharine Hack, and John
Hack, both deceased. The defendants and respondents are respect-

[1]Reported in 196 N. W. 180.

tively the sole devisee and legatee and the special administrator of John Hack. The decision below was against plaintiffs and they appeal from the denial of their motion for new trial.

A most novel situation is presented. The alleged contract is a special act of the legislature. It is claimed that thereby the mother of plaintiffs was not only made the adopted child of John Hack, but also that she was given irrevocably, by contract, the right to a child's share in his estate upon his death.

The act of the legislature claimed to constitute this peculiar contract is chapter 59, p. 246, Sp. Laws 1863, and with the title is as follows:

"An act to Change the Name of Ann Jane Clark to that of Catharine Hack.

"Be it enacted by the Legislature of the State of Minnesota:

"Section 1. That the name of Ann Jane Clark be and the same is hereby changed to that of Catharine Hack.

"Sec. 2. That said Catharine Hack is hereby declared to be the daughter and heir-at-law of John Hack, of the town of Hay Cruhe (sic) county of Goodhue, State of Minnesota, and she shall enjoy all the rights and privileges, and be subject to the same care and guardianship as if she had been the daughter of said John Hack, born in lawful wedlock.

"Sec. 3. This act shall take effect and be in force from and after its passage."

Then a very young girl, Ann Jane Clark seems to have found a home with John Hack and his wife not later than 1858. The Hacks then lived in the town of Hay Creek in Goodhue county. They had not been blessed with children of their own. Who or what the little girl's parents are is not disclosed. No one seems to know.

When the special act was adopted in 1863, the girl was not over seven years old. She remained in the Hack home, to all intents and purposes as a daughter, until her marriage, which occurred when she was not more than 17 years old. Plaintiffs are the issue of that marriage. Their mother passed away in 1876.

Sometime after her marriage and before 1874, there was an estrangement between the Hacks and their foster daughter which resulted in the procurement by John Hack of the passage of another special and private act, chapter 87, p. 305, Sp. Laws 1874, which repealed section 2 of chapter 59, Sp. Laws 1863.

It is frankly conceded by counsel for plaintiffs that the conclusion that the special law of 1863 was a contract is reached only on the assumption that it constituted an offer to Ann Jane Clark which was accepted, not by any reciprocal promise or engagement on her part, but by her conduct in assuming and performing for a period of approximately ten years the obligations of a daughter. Counsel can take no other position, for there is no claim that the parents of the girl, or any one else acting on her behalf, participated in the transaction and she herself by her tender years was excluded from doing so.

We pass that argument without further comment because we find another element of the case controlling, and sufficient alone to bring us to a decision.

In such a case as this there must be full and satisfactory proof, not only of the existence of a contract but also of its terms, before there can be specific performance. Brasch v. Reeves, 124 Minn. 114, 144 N. W. 744; Greenfield v. Peterson, 141 Minn. 475, 170 N. W. 696. What are the terms and what is the meaning of the special law?

To start with, we are struck by the exceedingly restrictive character of the title, which indicates that the main purpose was "to change the name of Ann Jane Clark to that of Catharine Hack." In passing, it is proper to remark that, if the law were to be construed as a contract to the full extent urged upon us, it would be unconstitutional because of the obvious disregard of section 27, article 4, of the Constitution of Minnesota.

But that is not the ground upon which we put our decision. Proceeding to the second section of the act we find that Catharine Hack is declared to be "the daughter and heir-at-law of John Hack." Any child is assumed, in popular conception, to be the heir of the parents. So it is not at all clear, and cannot be concluded from the

use of the phrase "heir-at-law" that anything was meant except that the girl would have the same right to inherit, and no more, that a natural and legitimate child would have. The concluding clause of section 2 supports that view. It provides that "she shall enjoy all the rights and privileges and be subject to the same care and guardianship as if she had been the daughter of said John Hack, born in lawful wedlock."

If, as we are asked to do, we should now declare this old statute to have been a contract under which Catharine Hack became not only the adopted child of John Hack, but also entitled in any event and as against contrary disposition by him, to a child's share of his estate, we would be giving to plaintiffs, as successors in interest of Catharine Hack, not merely *all* the rights and privileges" that a natural and legitimate child would have; but *in addition* the absolute and contract right to inherit which a child, as such, never has.

There is much force in the suggestion of the learned trial judge that the phrase "heir-at-law" used in section 2 may have been inserted through abundance of caution, to make sure that the act of adoption attempted by the statute would be accompanied by a natural and legitimate child's right to inherit. The common law had no rules for adoption and no methods for bringing it about. "Agreements to adopt do not in themselves create heirship." Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455.

Among the cases cited which it is thought should lead us to the other view are Gates v. Gates, 34 App. Div. 608, 54 N. Y. Supp. 454, and Middleworth v. Ordway, 49 Misc. 74, 98 N. Y. Supp. 110. In both cases the contracts were enforced as covenants to give property by will to the plaintiff. In Gates v. Gates, the decision was arrived at with expressed reluctance. In both cases, the covenant as to heirship was prospective and indicated an intention not only to change the present status of the child, but also to give it property at a definite time in the future. In Gates v. Gates the promise was to give "the same interest which a son would have in whatever property" the promisor "might have at the time of his decease." In Middleworth v. Ordway, the promise was that the adopted daugh-

ter, if the agreement was performed until she arrived at the age of 18, then would be entitled to her "dower right to the property." In both cases the contract was made by a parent acting on behalf of the child.

The only language of the contract now before us relating to its future operation was that Catharine Hack should "enjoy all the rights and privileges and be subject to the same care and guardianship" as a natural daughter. As already suggested it gave her all of the privileges of a natural and legitimate daughter and no more. Hence she had no contract right to share in John Hack's estate after his decease.

The other and preceding part of the agreement was simply that Catharine Hack was "declared to be the daughter and heir-at-law of John Hack." That language spoke in the present tense. Strictly speaking, it had no prospective operation. That portion of the agreement was executed automatically the moment the law became effective. It would be going a long way indeed to carry it forward as a contract—executory still—long after the decease of Catharine Hack and give the effect of distributing to her children a child's share in the estate of John Hack.

This case does not belong to the class of Brasch v. Reeves, supra; Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812; and Wold v. Wold, 138 Minn. 409, 165 N. W. 229. In each of those cases there was a definite covenant, prospective in operation, effective at the death of the promisor and entitling the promisee, at that time, to a share in the promisor's estate.

We find no such covenant here. On the contrary, there is only the sort of agreement dealt with in Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421. That case controls this one. As was there so pertinently remarked by Judge Taylor: "To contract to give an adopted child greater rights than the law gives a natural child is contrary to common experience." That is a cogent consideration in dealing with ambiguous language.

As to whether Catharine Hack, by virtue of chapter 59, Laws 1863, became the adopted daughter of John Hack, we express no opinion. That question is not before us. It must be determined in

the first instance by the probate court.　Odenbreit v. Utheim, supra.

It may well be that, notwithstanding its restrictive title, chapter 59, p. 246, Sp. Laws 1863, can be sustained as an act of adoption and nothing more.　It may be that the status given Catharine Hack by that law and the ensuing conduct of the parties were beyond the reach of the repealing act of 1874.　Finally, there is the argument of estoppel, more weighty than any other consideration in favor of appellants, whereby it is sought to prevent respondents from taking advantage of any defects there may have been in the special law of 1863.

But those questions are not properly here for decision.　This opinion concerns itself only with the issue of contract; and our holding is that there was no contract under which Catharine Hack acquired any greater rights than those belonging to a natural and legitimate child of John Hack.

Order affirmed.