## IN RE ESTATE OF JOHN HACK, DECEASED.
## JESSIE BROOM AND OTHERS, APPELLANTS.[1]

January 22, 1926.

No. 24,949.

**Attempted adoption of child by 1863 act was abrogated by repeal of act in 1874.**

Sp. L. 1863, c. 59, § 2, purported to declare the mother of appellants the child and heir at law of the deceased, and by Sp. L. 1874, c. 87, section 2 of the former act was repealed. The later act is *held* to have abrogated and severed the status and relation attempted to be established by the prior act. No implied contract to adopt can be found and no ground for invoking estoppel is in this record.

Adoption, 1 C. J. pp. 1380 n. 20; 1401 n. 36.

After the former appeal reported in 157 Minn. 301, 196 N. W. 180, the case was tried before Schultz, J., who held that appellants had no right to contest the probate of the last will and testament of John Hack, deceased. From an order denying their motion for a new trial, Jessie Broom and others appealed. Affirmed.

*A. J. Rockne*, for appellants.

*F. M. Wilson, Charles P. Hall* and *P. E. Sargent*, for respondent.

HOLT, J.

The probate court and on appeal the district court held that the appellants were not heirs at law of John Hack, deceased, and hence had no standing or right to contest the probate of his last will and testament. The appeal is from an order denying a new trial of that issue.

The appellants are the three children of Catharine Hack who died in 1878. John Hack, a widower, died July 13, 1919, aged 95 years. An instrument purporting to be his last will and testament, dated March 31, 1916, was presented to the proper court for

[1]Reported in 207 N. W. 17.

probate. All the property of the deceased was thereby given to his adopted son, John W. Hack. The appellants appeared to contest the will on the grounds of mental incapacity of the testator and undue influence exerted by John W. Hack. From the start appellants' right to contest was denied and, in view of a protracted litigation ahead, a special administrator was appointed. Then, after an appeal from the decision of the probate court allowing the will, proceedings were apparently stayed so that appellants could by suit in the district court assert a claimed contract right to half of the estate by virtue of Sp. L. 1863, p. 246, c. 59, § 2. That case was tried and decided against appellants in the district court and on appeal affirmed. Kempe v. Hack, 157 Minn. 301, 196 N. W. 180. After that decision the appeal from the probate court admitting the will to probate was brought on for trial, and the district court concluded to dispose first of the issue whether the contestants, the present appellants, were heirs at law of John Hack. If they could not be considered such, they had no right or standing to either appeal from the probate court's allowance of the will or to contest the will in any court. The issue was determined as first above stated. The sole matter for review is the correctness of that determination.

Adoption was unknown to the common law. Prior to the enactment of L. 1876, p. 107, c. 91, there was in this state no statutory procedure for adopting children, and by § 6 of said chapter it was expressly declared that the adoption itself shall not constitute the child heir of the adoptive parents. First by chapter 96 [p. 166], of the Laws of 1891, was authorization given to decree the child adopted such an heir, and prior decrees so providing were validated. R. L. 1905, § 3616, G. S. 1923, § 8630, gave all adopted persons the right of inheritance, whether adopted before or after its passage. Sorenson v. Rasmussen, 114 Minn. 324, 131 N. W. 325, 35 L. R. A. (N. S.) 216.

The question recurs: Did the mother of appellants become and remain the adopted child of John Hack? "The legal adoption by one person of the offspring of another, giving him the status of a

child and heir of the parent by adoption, was unknown to the law of England or of Scotland." Ross v. Ross, 129 Mass. 243. It is so stated in Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455; Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140; Albring v. Ward, 137 Mich. 352, 100 N. W. 609; Henry v. Taylor, 16 S. Dak. 424, 93 N. W. 641; Matter of Thorne, 155 N. Y. 140, 49 N. E. 661, and other cases. The necessary deduction from this would be, as stated in 1 C. J. p. 1371: "In the absence of statutory authority, it is not within the power of an individual to create the relation of parent and child by adoption."

Hence whenever, in the absence of an adoption pursuant to some legislative enactment, a child, received from the natural parents into the home of foster parents and treated by the latter as a natural child, has been allowed to share in the estate left by the foster parents, it was only where a contract to legally adopt such child or to give it a share in such estate is clearly proven. This was done in Fiske v. Lawton, supra, but unsuccessfully attempted in Kempe v. Hack, supra. There remain to appellants now only these two resources, viz: (a) To establish a contract to adopt; or (b) to prove a legal adoption which was in effect when their mother died.

It is impossible to find a contract to adopt. Whether Catharine Hack came into the home of John Hack as a doorstep waif or was received from her natural parents, is not disclosed. There is not the slightest evidence that she or her natural parents ever had any actual knowledge either of the enactment of Sp. L. 1863, p. 246, c. 59, or of Sp. L. 1874, p. 305, c. 87. She was under 7 years when she came into the Hack home and of course incapable of contracting. She married and established a home of her own in 1868 when only 16 years old. From these facts it is not possible to find an implied contract to adopt, hence the principle of estoppel cannot be invoked, for there must first be proved, to say the least, an implied contract. Simply that a child of another is received into a home, cared for and educated until the age of 16 years, cannot well indicate that such a child has further claims upon those who so took it in. No doubt such a child has received much more than it has parted with.

In this state prior to the enactment in 1876 of the statute authorizing the district courts of the state to decree adoption, upon the natural and adoptive parents taking certain prescribed steps, there was no way of creating the status of child as to persons not its natural parents. John Hack could not have created that status or relation between himself and Catharine by any written or oral declaration. It could be done only by the state through an act of the legislature. There was here such an attempted adoption by chapter 59, p. 246, Sp. L. 1863. This act is assailed as invalid for defective title. The title is: "An act to Change the name of Ann Jane Clark to that of Catharine Hack." By section 2 thereof Catharine Hack is "declared to be the daughter and heir at law of John Hack." Such a defect in the title of a general law providing the procedure for the adoption of children was held fatal in People v. Congdon, 77 Mich. 351, 43 N. W. 986. A cursory examination of our special legislation on this subject, prior to the enactment of a general statute governing the same, reveals that in perhaps the majority of cases the same defect in title exists.

For example, chapter 150, p. 385, Sp. L. 1867, bears the title "An act to change the names of divers persons" and therein 12 children are separately declared either the adopted child of some named person or the child and heir at law of some one, and about as many more persons simply have their names changed. Chapter 127, p. 426, Sp. L. 1868, under a like title, concerns 28 persons who are either adopted and made heirs at law, or constituted heirs at law only, indiscriminately, and 24 other persons merely receive another name, all in one section. These are only samples.

Courts should hesitate at this late day to disturb the status and rights established long ago. Atwell v. Parker, 93 Minn. 462, 101 N. W. 946. In the instant case this is not called for, because of the effect which must be given to Sp. L. 1874, p. 305, c. 87, which repeals Sp. L. 1863, p. 246, c. 59, § 2, the section upon which appellants must base their claim.

There can be no fair doubt of the power of the legislature to interfere with the rights of heirship. Sorenson v. Rasmussen, 114 Minn.

324, 131 N. W. 325, 35 L. R. A. (N. S.) 216. The status of a child to its natural parents or to its adoptive parents is no more beyond the power of the state to change. Aside from heirship the main attributes of the relation of parent and child are support, care, custody, education and services. In certain cases these duties and liabilities may be severed or changed by the state, now by general law, formerly by special or private statutes. A well considered case pertaining to the power of the state over the status of an adopted child is in the Matter of Ziegler, 82 Misc. 346, 143 N. Y. Supp. 562, where, under a decree of a court, a prior decree of adoption in another court was abrogated and the question arose as to the validity of the abrogation. The contention was that the abrogation was invalid because the natural mother of the child had not consented thereto, and contract rights were involved. The court, after stating that the common law contained no provision for the adoption of children and that adoption depends on the existence of statutes says:

"Without such acts the common law or contract does not sanction an attempt to create the relation of parent and child by adoption. It is the state, and not the parents by nature and by adoption, which creates the new status of a child by adoption. The rights and obligations of the adoptive parent and of the adopted child are due wholly to the statute of the state. The prerequisites for adoption are subordinate to the authorization or imprimatur of the state. When the state has sanctioned the adoption, the new status of parent and child is ipso facto complete. It seems reasonable to assume that a status created by the state may be altered or abrogated by the state only. * * *. Status can be determined only by the state and not by agreement of the parties. * * *. Whenever a condition in life is determined by law, and not by act of the parties, it is correctly denominated a status in jurisprudence, * * *. Status, recognized by law, is the basis of rights. The status of an adopted child, for example, is the basis of his legal rights against his adoptive parents. When his rights are invaded it is not the contract of adoption he resorts to, but to his status as the child of his adopted father. So the duties and rights of the adoptive father

are determined by the law of the status and not by contract. Burnes v. Burnes, 137 Fed. Rep. 781, 797, 70 C. C. A. 357. Under all systems of law which recognize adoption of children, emancipation from parental power and control, or an abrogation of the artificial relation, is also recognized and is treated as an act by operation of law and not as an act of the parties to the adoption. In other words, the state alone can determine when the relation of parent and child ceases."

The principles so clearly set forth above preclude the thought that John Hack could be estopped from questioning either the adoption or the abrogation thereof, even though it may properly be said that both acts were passed at his instance. Sayles v. Christie, 187 Ill. 420, 58 N. E. 480. When the last act was passed there was really nothing left of the unperformed duties, obligations and rights between Catharine Hack and John Hack, except the right of inheritance, which, as already stated, was within the control of the legislature, there being no semblance of a contract under which a share in the estate of John Hack could be claimed.

We conclude that it was within the sole power of the legislature to abrogate the status between Catharine and John Hack, created by Sp. L. 1863, p. 246, c. 59, and that this was accomplished by the repeal of section 2 thereof in 1874 by chapter 87 of the special laws. Her status as a child of John Hack being thereby terminated, the appellants, her children, are not heirs at law of John Hack, and the court below correctly decided that they had no right to contest his will.

Order affirmed.