In the Matter of Estate of Barbara K. Leichtenberg, Deceased.
James J. Remich et al., Appellants, v. Victor Mueller, Also Known as Victor Mueller Leichtenberg, Appellee.

**Gen. No. 46,392.**

First District, Third Division.

March 16, 1955.

Released for publication April 7, 1955.

George A. Rooney, Maxfield Weisbrod, and Ross S. Welch, all of Chicago, for appellants.

Levinson, Becker & Peebles, of Chicago, for appellee; William J. Lunn, and Halbert O. Crews, both of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

This is an appeal from an order of the circuit court on appeal from the probate court. In the probate court the blood relatives of Barbara Leichtenberg, deceased, were adjudged to be her heirs. Victor Mueller objected to the declaration of heirship made by that court and appealed to the circuit court, which held that the decedent left, as her sole heir and next of kin, Victor Mueller. James J. Remich and other blood relatives of the decedent, hereinafter called "Remich," appealed to this court.

In 1918 John Leichtenberg and Barbara, his wife, residents of Chicago having no children, filed a petition

in the county court of Cook county to adopt Victor Mueller, aged ten. Victor Mueller is a son of Jacob and Anna Mueller who are residents of the State of Wisconsin. The decedent, Barbara Leichtenberg, was a sister of Jacob Mueller. The Muellers consented to the adoption of their son Victor and a decree was entered accordingly. Victor was in the care and custody of the Leichtenbergs for about two weeks when he was returned to the Muellers, his natural parents, where he remained until he was married. It is uncontroverted that after Victor was returned to his natural parents he never visited or corresponded with the Leichtenbergs. There was also evidence tending to prove that one of the reasons for the adoption of Victor was that John Leichtenberg, who was eligible for draft during World War I, believed that he could avoid being inducted into the military service by claiming Victor as a dependent child.

In September 1920 the Muellers filed a petition in Washington county, Wisconsin, to adopt their child Victor. The Leichtenbergs gave their written consent to the adoption. The order of adoption provided, among other things, that "the said child Victor Mueller shall be fully restored to his natural parents as though no prior adoption had ever been made." John Leichtenberg died before his wife, and Barbara Leichtenberg left her surviving lineal and collateral kindred. Both of the Leichtenbergs died after the adoption of Victor Mueller by his natural parents.

In his reply brief Victor Mueller challenges the validity of the judgment in the Wisconsin adoption proceedings. This contention is without merit. Since the adoption order in the Wisconsin proceedings was entered more than thirty years ago, the attack on the judgment order in this proceeding constitutes a collateral attack. See Barnard v. Michael, 392 Ill. 130. In case of a collateral attack the presumptions are in favor of the validity of the judgment attacked and

want of jurisdiction to enter the same must appear on the face of the record in order to furnish a basis for collateral attack. Such cannot be shown aliunde. (Cullen v. Stevens, 389 Ill. 35; Equitable Life Assur. Soc. v. Wagner, 2 Ill.App.2d 284.) In the instant case an examination of the record does not disclose lack of jurisdiction of the parties or of the subject matter. Moreover, this question was not raised in either the probate court or the circuit court.

■ The order of adoption entered in the county court of Washington county, Wisconsin, established the status of Victor Mueller. The governing rule is stated in McLaughlin v. People, 403 Ill. 493. There a child adopted in Connecticut claimed the exemption accorded a child under the law of Illinois, where the adoption of adults is not permitted. The court said, at page 498: "The general rule, in effect reiterated in the decisions of this and other courts, is that the status acquired by a valid decree of adoption in one State will be recognized and given the same effect by the courts of another State in determining rights of inheritance as would be given if the status of adoption had been created by a valid decree of the court in the latter State." We must give full credit to the adoption order entered in Wisconsin (Roberts v. Sauerman Bros., Inc., 300 Ill. App. 213, aff'd in 370 Ill. 344; Allen v. Straus, 285 Ill. App. 188), and give it the force and effect to which it is entitled in that State. See Hieston v. National City Bank of Chicago, 280 Fed. 525.

Remich contends that Victor Mueller, being a twice-adopted child who only lived with his first adoptive parents two weeks and was then readopted by his natural parents, cannot inherit from his first adoptive parents where no property vested in him before the adoption. This precise question has never been determined by the courts of review of Illinois.

In support of his contention Remich relies on In re Estate of Talley (Harris v. Burgess), 188 Okla. 338,

339

109 P.2d 495 (1941); In re Estate of Klapp (Klapp, et al. v. Pulsipher), 197 Mich. 615, 164 N. W. 381 (1917); In re Estate of Carpenter, 327 Mich. 195, 41 N.W.2d 349 (1950); In re Estate of Zaepfel (Jones v. Security First Nat. Bank), 102 Cal.App.2d 774, 228 P.2d 600 (1951); and In re Estate of Hack, 166 Minn. 35, 207 N. W. 17 (1926).

In In re Estate of Talley, 188 Okla. 338, 109 P.2d 495, it appears that Thomas Talley and wife Cynthia adopted a boy aged fourteen. The boy and his father, his only living parent, gave their written consent to the adoption. Five years later the natural parent filed a petition for adoption. The Talleys and the boy filed written consents. The adoption order provided that the former adoption decree "become null and void and for all intents and purposes as if the same had never been made and entered by this court." Cynthia Talley died after the boy was readopted by his father. The boy filed an application to vacate the final decree of distribution in the Cynthia Talley estate, claiming a share in the estate based on the rule that an adopted child omitted, but not intentionally, from the will of an adoptive parent, inherits by the laws of intestacy. The court, at page 496, said: "But suppose, as in this case, there is a second adoption prior to the death of either of the first adoptive parents. Does the child still inherit from one of said former adoptive parents who thereafter dies . . . It is obvious that cases are not in point wherein the second adoption takes place after the death of the first adoptive parents. In such a situation the inheritance occurs at the instant of death, if at all. At that time there is no second adoptive parent. There may never be any. The estate vests. It is immaterial whether later a second adoption occurs. Under such circumstances it has been held, and we think rightly so, that the adopted person inherits from the first adoptive parent." (Citing Russell's Adm'r v. Russell's Guardian, 14 Ky. Law Rep. 236; and Patter-

340

son v. Browning, 146 Ind. 160.) See comment on those cases in L. R. A. 1918 A 824, 825.

In In re Estate of Klapp, 197 Mich. 615, 164 N. W. 381, Harlan Austin, aged three, was adopted by Cyrus Klapp and his wife. Upon the death of the adoptive mother the child was adopted a second time by the Pulsiphers. Upon the death of Cyrus Klapp, the first adoptive father, the question of heirship arose. The court said, at page 381: "Assuming that the second proceeding is valid, I am of the opinion that, when it was signed and assented to by the parties and approved by the probate court, it ipso facto had the effect of revoking or superseding the order made in the first proceeding. When the original order was revoked, it carried with it all the reciprocal rights and duties which sprang into existence when the order was made. Thereafter the first adoptive father was no longer entitled to the custody of the child; neither was he entitled to its services. He was no longer obligated to care for, educate and support the child. If the new adoption destroyed these rights and obligations, why did it not destroy the child's right to inherit, since that right was dependent for its existence upon the same assent, the same agreement, which created the other relations? When the reciprocal rights and duties and the right to inherit are all created by the same instrument, signed by the parties and approved by the probate court, by what process of reasoning can the conclusion be reached that a new and second order will put an end to all the rights, duties and incidents of the contract except the right to inherit?"

In In re Estate of Carpenter, 327 Mich. 195, 41 N.W.2d 349, the Supreme Court of Michigan reaffirmed the rule announced in In re Estate of Klapp.

In In re Estate of Zaepfel, 102 Cal.App.2d 774, 228 P.2d 600, Sylvia Jones, the petitioner, was born in Connecticut. Afterward her parents were divorced. The father married the decedent, Helen N. Zaepfel, who

341

adopted the petitioner under the laws of Connecticut. Petitioner, her father, and decedent then moved to New York where petitioner's grandmother adopted her under the laws of New York. After the death of petitioner's father, his widow Helen N. Jones (Zaepfel) moved to California and remarried. She died in California and left her entire estate to a church. Petitioner Sylvia Jones claimed the right to inherit as an adopted child of decedent. The court, at page 602, after adverting to In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925, and Patterson v. Browning, 146 Ind. 160, 44 N. E. 993, said: "It must be noted that these and other similar cases were decided upon one of two theories. Either the law in the State of adoption permitted an adopted child to inherit from its natural parents, or the second adoption took place after the death of the first adoptive parent and when the child's right to inherit had already vested. Neither of these situations is here present. Obviously, an entirely different situation would be presented had the second adoption in New York not taken place. But as hereinbefore indicated, the obvious purpose and effect of such second adoption could only have been to substitute the newly created status whereby appellant's grandmother became the guardian, for the previous adoptive parental role which the decedent occupied. That the decedent so understood the matter is made clear by the will statement, 'I have no children; . . . no descendants or ancestors now living.' Having once thus severed the original adoptive relation between the appellant and decedent, it seems neither good law nor good reason to now attempt to restore that relation for the purpose of enabling appellant to inherit from one not otherwise related."

In In re Estate of Hack, 166 Minn. 35, 207 N. W. 17, John Hack by special act of the legislature adopted Catherine Hack. This act was repealed ten years later. Thereafter John Hack died, leaving all his property to John W. Hack. Three children of Catherine Hack

sought to contest John Hack's will on the ground that they were his heirs at law. The court held that it was within the sole power of the legislature to abrogate the status between Catherine and the adoptive father and that once the status of an adopted child is ended his rights to inherit end with it.

Victor Mueller asserts that the preponderance of authority in other jurisdictions supports his contention that a child adopted a second time retains its right to inherit from its first adoptive parents, even though the first adoptive parents are living at the time of the second adoption.

In the instant case the trial judge in the circuit court rested his decision on In re Estate of Tilliski, 390 Ill. 273. In that case the adoptive parent of Sarah A. Martin died before the death of her natural mother, Mary E. Tilliski. The sole question there was whether an adopted child could inherit a child's share of the estate of her mother. The court held that the right of an adopted child to inherit from its natural parents is not lost by becoming the adopted child of another. We do not regard the question decided in In re Estate of Tilliski as being determinative of the issue presented in this case, for the reason that Mueller claims the right to inherit from his first adoptive parent who died long after his adoption by his natural parents.

In support of his position Victor Mueller also cites Holmes v. Curl, 189 Iowa 246, 178 N. W. 406; Dreyer v. Schrick, 105 Kans. 495, 185 Pac. 30; Hawkins v. Hawkins, 218 Ark. 423, 236 S.W.2d 733; Villier v. Watson, 168 Ky. 631, 182 S. W. 869; and In re Estate of Egley, 16 Wash.2d 681, 134 P.2d 943.

In Holmes v. Curl, 189 Iowa 246, 178 N. W. 406, a minor child was adopted by written articles as provided by the Iowa statute. The sole surviving parent consented. The father of the child readopted it while the former adoptive parents were alive. The court held that the adoption was for the benefit of the child and

343

that the child did not lose its right to inherit from its father by adoption but acquired an additional right of inheritance. The reasoning in that case followed Dreyer v. Schrick, 105 Kans. 495, 185 Pac. 30. Both of these cases cite with approval Patterson v. Browning, 146 Ind. 160, 44 N. E. 993, where the right to inherit of the adopted child had vested before it was readopted four years later.

In In re Estate of Egley, 16 Wash.2d 681, 134 P.2d 943, it appears that in 1923 the Egleys adopted a child nineteen months of age. When four and a half years old the child was adopted by the Carstens. Mr. Egley died in 1936 and Mrs. Egley in 1941. The adopted child claimed she was entitled to inherit from her first adoptive father and mother who died long after the second adoption. The court held that the right to inherit cannot be set aside by a subsequent adoption, citing Patterson v. Browning, 146 Ind. 160, 44 N. E. 993.

In Hawkins v. Hawkins, 218 Ark. 423, 236 S.W.2d 733 the question presented was whether an adopted child having been later adopted can inherit from its first adoptive parents. There the court was persuaded by the reasoning in Villier v. Watson, 168 Ky. 631, 182 S. W. 869. In the Villier case, Paul Villier, a divorced man, sought to adopt two children aged seven and twelve respectively. Their parents were dead and the children were in the custody of their grandfather Henry Watson. A decree of adoption was entered in 1906. After the children had resided with Villier for about four years, Henry Watson, the grandfather, re-adopted them with Villier's consent. Villier died in 1915. The court said, at page 872: "All the authorities agree, that the fact of adoption does not lose the adopted child's right of inheritance from his parents. With this right existing, it would be difficult to see why a child could not inherit from two or more persons who might by adoption bestow that right upon him. If

344

such rule, as is contended by appellants should prevail, and the child was held in adoption, the adoptive father or other designing person could take away the child's right of inheritance from the adoptive father by procuring some penniless person to adopt the child as his heir, which he might do without the child's or anyone else's consent, and the parental control could be acquired by the consent of the adoptive parent."

■ We are not impressed with the reasoning in the Villier case for the reason that in Illinois the expectant right of inheritance of an adopted child can be rendered worthless during the lifetime of the adoptive parents. They can dispose of their property by will, by making a gift, or by the creation of a trust.

■ In the instant case the adoption of Victor Mueller by the Leichtenbergs lasted only two weeks. Whether this brief relationship between the Leichtenbergs and Victor Mueller ever had any of the attributes of parent and child is doubtful. Nor can we perceive any valid grounds why, under the circumstances shown here, the expectant right of inheritance should persist. In a scholarly article appearing in Notre Dame Lawyer, Volume 16, page 240, the author has made an accurate analysis of the rule announced in In re Estate of Talley, 188 Okla. 338, 109 P.2d 495, and the prior decisions in other jurisdictions, pointing out the distinction between those cases where the first adoptive parent had died and the inherited property had already vested before the second adoption took place, and cases upon which Victor Mueller relies where that distinction appears to have been disregarded. We think In re Estate of Talley is the best reasoned and the rule there announced is applicable to the instant case.

In the view which we take of this case it is unnecessary to consider the other points raised.

For the reasons stated, the judgment order is reversed and the cause is remanded with directions to

find that the blood relatives of Barbara Leichtenberg, deceased, are her heirs.

Judgment order reversed with directions.

KILEY, P. J. and FEINBERG, J., concur.