In the Matter of the ADOPTION OF AN ANONYMOUS CHILD.

Surrogate's Court, Schenectady County, May 11, 1949.

*Richard H. Levy* and *Samuel Levy* for petitioners.

*William C. Maynard* for respondent.

LIDDLE, Acting Surrogate. Proceeding pursuant to article VII of the Domestic Relations Law of the State of New York.

Without doubt the most difficult and perplexing problems which come before a court for determination and decision are those questions which have to do with those vitally important but sometimes wholly imponderable questions of human relations involving the basic sentiment of mother love. This proceeding is a striking example.

The mother of the child to be adopted in this proceeding was born amid rural scenes and environment in a small town in the State of West Virginia, twenty-five years ago, of parents in moderate means, where she grew to womanhood. During World War II she enlisted as a WAC in the national defense of her country and for at least two years she was a hostess in the air corps. After the conflict subsided she received an honorable discharge from her wartime duties. While in the service she met a young soldier and as she testified, kept company with him. He promised to marry her and as a result of this relationship a little child was born to her in the county of Schenectady and State of New York, on January 22, 1946.

It appears that upon her discharge from military service and upon her return home, when she learned of her condition she left her home and came to the county of Schenectady as a refuge, where she had and now has a married sister living. After the birth of this child and when she was of sufficient strength she secured a position in a tavern and grill of petitioners as a waitress and received compensation and tips in the aggregate of $50 a week. She secured a boarding home of her own choice and paid for a considerable length of time for the care of her offspring until she became ill and was required to go to a hospital

for medical treatment and a surgical operation, where she remained for some time. After this experience it appears that her money was gone and she had insufficient funds with which to provide for the care of her child and finally discussed her problem with her employer. Her employer and his wife finally accepted the child in their home with the mutual understanding that she was welcome to make visitations and see the child and have the child from time to time, as she chose.

A history of the evidence reveals that this arrangement continued for a time when a conversation took place between the mother and her employer regarding an alleged adoption of the child. Finally she was requested to interview an attorney, who was the attorney of petitioners herein. As a result of the short interview in the attorney's office, the attorney prepared a document and took it personally to the tavern of petitioners where the mother and respondent herein was employed and, as the testimony of both the petitioners and respondent reveals, and without further investigation and without the aid and advice and counsel by either petitioners or respondent or an authorized agency or such person or persons commonly well known to be qualified in such matters, respondent executed the document referred to in the testimony as a consent.

It was further testified that this document was executed during the lunch hour and executed on the end of the bar and amid surroundings of the usual confusion such as usually exists at rush periods in the course of the business of a grill and tavern located in the central area in the city of Schenectady.

The testimony further reveals that for a time and periodically the mother made visitations at the home of her employer and his wife until there came a time in the life of this little child that its mother was not welcome to make these visitations. On very few occasions the little child was brought to the tavern where the mother was permitted to see the child in a car and finally this practice was discontinued.

The respondent at one time in her unsettled career married, and within a very short period of time her marriage was annulled, after which respondent returned to the employ of petitioner and at his tavern and this relationship continued for a short time and the relationship between petitioner and respondent became so estranged that respondent left the employ of petitioner.

Some testimony was offered by Tavern co-operators and owners to the effect that respondent said that she was glad that her child was in the home of petitioner.

Upon this analyzed statement of facts petitioners have made application for an order to approve the adoption of the child, of whom respondent, an adult person, is the natural mother. Petitioners rest on two grounds for adoption, first, the alleged document called a consent, to place the child for adoption in the home of petitioners, and second, that respondent abandoned her child.

Respondent, having been duly cited, appeared by counsel and interposed an answer opposing the application. Respondent denies further that she abandoned the child. That she did not understand the import and the nature and the consequences of the document called a consent and that the consent was obtained through misunderstanding, misrepresentation and fraud.

The court's analysis and observation of the petitioner and his wife is that they are financially and temporally and morally well provided with means whereby to provide for this child before the court or any other child and are highly commended for the urge, wish and desire for an adoptive child as a comforting influence in their well-equipped home.

Adoption was unknown at common law and consequently the relationship can be consummated only in the manner prescribed by statute. (*Matter of Thorne,* 155 N. Y. 140; *Matter of Cohen,* 155 Misc. 202.)

Unless, therefore, petitioners have substantially complied with the statutory provisions, they cannot prevail. (*Matter of Ziegler,* 82 Misc. 346, affd. 161 App. Div. 589. Also, see, *Matter of Anonymous,* 178 Misc. 142, 144.)

It is well established and in fact undisputed that the petitioners have the burden of proof on the issue of abandonment. Abandonment has been defined as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. In the case at bar petitioners are seeking to establish a new relationship at this time, in the face of the earnest opposition of the natural mother who is now and for some time in the past, as the record reveals, seeking authority to resume the parental duties and assert the parental claims, which, it is contended, she failed wholly to relinquish at a time when she believed herself financially incapable of providing for her child as she had done previous to her illness. It seems clear that the respondent in this proceeding has demonstrated in a reasonably sensible manner her desire to resume her parental duties in respect to her infant and that the circumstance that she has not in fact done so is due solely to the acts of prevention accomplished or attempted to be accomplished by the petitioners herein.

She may not have exercised continuous and repeated demands for her child and offspring. However, that will be briefly discussed later.

I must, therefore, come to the firm conclusion that petitioners have failed to establish by a fair preponderance of the evidence and by clear and convincing proof that respondent abandoned her child.

As to the document referred to in the evidence and the exhibit attached to the petition as a consent, that is quite another situation. It must be clearly observed that the docment alleged to be a consent to adopt the child was not directed to an authorized agency as specified in section 384 of article 6 of the Social Welfare Law, but was addressed to the petitioners herein as individuals. '' Surrender of custody of a child by a parent to an individual as an incident of adoption by the latter, whether or not by written instrument, is without statutory cognizance. Even though there be such a written surrender, no person can be legally adopted save in pursuance of article 7 of the Domestic Relations Law ''. (See *People ex rel. Anonymous* v. *Perkins Adoption Soc.*, 271 App. Div. 672, 673.)

And further the same court in its opinion under statement of facts not comparable to the case at bar, held that (p. 673), '' Accordingly, the surrender of a child to an individual pursuant to a writing does not spell out, necessarily, such irrevocable abandonment of the child as obviates the necessity of the consent of the mother to adoption. All factors must be taken into consideration, inclusive of the trial period of six months, in determining whether there has been an irrevocable abandonment.''

In view of the facts at the time of the execution and placement of the child in petitioners' home, wherein only one conclusion can be drawn from the evidence and that is that this respondent did not understand the import and the consequence of her act and acts, there were sufficient infirmities entering into the execution as to warrant a finding that there was an absence of a complete meeting of the minds between petitioners and respondent and, therefore, the document was tainted with fraud and misrepresentation and, therefore, invalid.

One of the reasons for this view of the court is that here, a twenty-five-year-old mother, with apparent limited financial resources, is attempting to regain and to resume her parental duties in respect to an infant and the transgression of parental given blood ties should not predominate where other equities are equal.

It appears further that there is a failure of a substantial compliance with sections 111 and 112 of article VII of the Domestic Relations Law, wherein it appears that upon an interrogation either by the court or counsel for the respondent, respondent was asked whether or not she was willing to execute a consent in this proceeding before the court, upon the hearing of the issues herein. She refused.

Subdivision 1 of section 112 of article VII requires in words or substance that all persons whose consent is required, namely, under clause 3 of section 111, of the mother of the child born out of wedlock, *must* appear for examination before a judge or surrogate before the approval of an adoption. This statutory requirement was calmly and firmly refused by respondent. Neither issue was further developed during the process of the hearing before the court.

It appears conclusively that the petitioners and the respondent are of different religious faiths or communion. Section 373 of article 6 of the Social Welfare Law, also section 113 of article VII of the Domestic Relations Law, through the various Legislatures for years have established a definite and positive policy regarding this issue in which it is firmly established that the courts of the State, when practicable, must give custody only to persons of the same religious faith. And section 373 of the Social Welfare Law uses in substance the same language and the further language in subdivision 4, and I quote: " The provisions of subdivision one, two and three of this section *shall* be so interpreted as to assure that in the care, protection, adoption, guardianship, discipline and control of any child, its religious faith *shall be preserved and protected.*" [Italics supplied.]

And it appears further in subdivision 5 of the same section, that should the court or an agency or a person make a different finding, " the court, public board, commission or official shall state or recite the facts which impelled such disposition to be made contrary to the religious faith of the child ".

It therefore appears that with this well-established policy of the commonwealth of the State of New York, this court should not by judicial fiat transgress the will of the People of the State of New York through its Legislature.

Counsel for petitioners strenuously urge the court that the mother has been delinquent in exercising her recovery of the custody of her child. This court has given very careful consideration to this issue and it seems that the courts have held that silence and inaction of the parent refusing consent must be pro-

longed to such a point that an intention to abandon the child must be inferred as a matter of law. (See *Matter of Bistany,* 239 N. Y. 19.)

It seems to this court that this mother, commensurate with her means and all the facts and circumstances surrounding the events of the life of this child, has used reasonable diligence in securing her child and in opposing this adoption, and in fact it appears that there now is pending before the Supreme Court of the State of New York, an application for a writ of habeas corpus for the custody of this child on behalf of the mother.

For the reasons set forth this court is impelled to come to the conclusion that it is not practicable to allow the adoption and accordingly the application for adoption is hereby denied.

Submit order.