## O'Neill Estate

*Samuel W. Rhoads,* for accountant.

*Charles L. Casper* and *William J. Fahey,* for petitioner.

*Joseph F. Gallagher, Patrick J. O'Connor* and *Edward T. Jordan*, contra.

BRADY, P. J. (specially presiding), May 16, 1951.— This case is before us on two petitions for specific performance of contracts: One filed April 26, 1950, on behalf of Mary McBride O'Neill Duffy, adopted daughter of decedent, and the other filed April 24, 1951, on behalf of Edward P. O'Neill, adopted son of decedent. From the nature and substance of the petitions we will consider them together.

On May 5, 1950, an answer of the Second National Bank of Wilkes-Barre, Pa., executor and trustee of the estate of Matilda K. O'Neill, deceased, to the petition of Mary McBride O'Neill Duffy was filed.

Patrick F. O'Neill, husband of Matilda K. O'Neill, present decedent, died March 3, 1942, testate, and by his last will and testament duly probated in the Register of Wills of Luzerne County to no. 288 of 1942, he gave, devised and bequeathed his entire estate to his wife, Matilda K. O'Neill, and named her and the Second National Bank of Wilkes-Barre, Pa., his executors. In addition to his wife he left surviving him two adopted children, viz., Edward P. O'Neill and Mary McBride O'Neill Duffy.

Matilda K. O'Neill died testate, February 16, 1950, and by the terms of her last will and testament, duly probated in the Register of Wills office of Luzerne County, she provided for a number of specific charitable legacies, and placed the residue in trust for the benefit of Edward P. O'Neill, her adopted son. In her will she gave her adopted daughter, Mary M. O'Neill (now Duffy) only $1, which is evidently the cause of this litigation. The account shows a total gross estate of $210,498.72, made up of both personalty and real estate.

Mary McBride O'Neill Duffy presented a claim against the estate of Matilda K. O'Neill, deceased, for

one-half interest in the estate, based on a contract entered into between the New York Foundling Hospital, of the State of New York, and Patrick F. O'Neill and Matilda K. O'Neill, dated July 8, 1926, of which contract Mary McBride (now by marriage Mary McBride O'Neill Duffy) was the subject—subject to the conditions and provisions stated in the contract.

The pertinent part of the contract, and apparently the paragraph on which petitioner rests her claim, reads as follows:

"VIII—And the parties of the second part further agree, that if said child be not returned to the party of the first part when she attains the age of eighteen years, or shall not have been returned before she shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of the parties, *or if said child be not adopted* by said parties of the second part before the child attains such age, then the parties of the second part, in consideration of this Indenture and of being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that, if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate

child of the parties of the second part." (Italics supplied.)

It appears from the contract of July 8, 1926, when Mary McBride was placed in the custody of Patrick F. O'Neill and his wife, Matilda K. O'Neill, the child was of the age of "three years and three months." With the consent of the New York Foundling Home, when the child, Mary McBride, was about 12 years old, Patrick F. O'Neill and Matilda, his wife, on August 14, 1935, presented a petition to the Orphans' Court of Luzerne County for permission to adopt the child, and by decree of adoption dated August 26, 1935, the adoption was allowed, which was long before the stipulated period of 18 years mentioned in the custody agreement.

Contracts in which both parties assume an obligation, or in which both yield some right for the benefit received, are called onerous. A contract is gratuitous or one-sided, if only one party gives up a right to ownership, the other party accepting the proffered benefit without any cost to herself. This is the case in gifts among the living or in wills of the deceased. In either instance the principle of equality between what is given and what is received has a bearing on what determines the justice of the transaction.

Suppose we delete some of the parenthetical verbiage found in paragraph VIII and look at it from the following aspect: "And the parties of the second part further agree, that, if said child be not returned to the party of the first part when she attains the age of Eighteen years, or shall not have been so returned before she shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of both parties, *or if the child be not legally adopted by said parties of the second part* before said child attains such age, then . . . if the parties of the second part shall die intestate, said child shall in-

herit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part."

No provision is made in the agreement as to what would happen if the child had been adopted, which she was. This child was not returned to the party of the first part either before or after she attained the age of 18 years, but on the contrary she was legally adopted by the parties of the second part. Our opinion is that when the decree of adoption was entered by the Orphans' Court of Luzerne County this child acquired an entirely new status and became the legal child of the parties of the second part, with all the rights, duties and obligations of a natural child and that the conditions and provisions of the custody agreement were fully complied with and therefore terminated and canceled.

Now as to the child's right of inheritance: A natural mother can disinherit a natural child of the blood and without giving any reasons therefor. Surely it would be an unfair restriction on the property rights of a law-mother to be denied the same privilege with respect to an adopted child—a blood stranger.

Inviolability is due to last wills, not only by reason of the right which testator has to dispose of his property or her property, but also on account of the common good of society. Few men, or women either, would

care to exert themselves beyond the efforts necessary for present needs, if they could not dispose of the property acquired by their toil for the benefit, after their death, of those who are nearest and dearest to them, or of objects and institutions the success and continuity of which they had greatly at heart during life.

We have been unable to find any Pennsylvania cases squarely on the issue involved here. The most helpful and most nearly similar in substance is McDaniel's Estate, 305 Pa. 17. In that case the child was not adopted, and the court there held: "As a natural child, Mrs. McDaniel could have disinherited it by will. . . . It assumed no higher rights than a natural child."

This court disagrees with the findings in a similar case in the Court of Chancery of New Jersey, found in DiGirolomo v. DiMatteo 108 N. J. Eq. 592, 156 Atl. 24 (1931), cited by counsel for petitioner.

Law is based, allegedly at least, on common sense. We think this is a good time to use it.

Both petitions for decrees of specific performance are dismissed.