## McDaniel's Estate.

Argued May 13, 1931.   Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Ralph L. Belford,* for appellant.—There was no other consideration for the contract than the mere placement of the child with the McDaniels.

Nowhere in the contract is there any obligation placed upon the child itself, nor are there any duties required to be performed by the child.

There was undoubtedly a contract as between the Children's Home Society and the McDaniels, which was for the benefit of the child, but nowhere in the contract does the home agree that the child shall render duty or service of any kind to the parties in whose home the child might be placed.

"In ascertaining the intention of the parties to a contract, it is proper to take into consideration all the negotiations leading to the formation of the contract, its subject matter, the purpose to be effected, the consideration passing between the parties, and also all the circumstances surrounding the parties when they entered into the contract": McMillin v. Titus, 222 Pa. 500; Thatcher v. West Chester St. Ry., 35 Pa. Superior Ct. 615.

*Wm. H. Hackenberg,* for appellee.—Where the parties have interpreted a contract themselves and acted upon such interpretation, the courts will regard it as the proper one and enforce it accordingly. Contemporanea expositio est optima et fortissima in lege: Fisher v. Ronemus, 267 Pa. 325; McMillin v. Titus, 222 Pa. 500.

An adoption paper is competent evidence that a contractual relation existed between the alleged adopting parent and the child; and where such person dies intestate, and the child has rendered services due from a child to a parent, he is entitled to participate in the distribution of the estate: Evans's Est., 47 Pa. Superior Ct. 196; Gruber's Est., 27 Pa. Dist. Rep. 474; Brinker v. Brinker, 7 Pa. 53; McGinley's Est., 257 Pa. 478; Johnson v. McCue, 34 Pa. 180.

OPINION BY MR. JUSTICE KEPHART, June 27, 1931:

Elizabeth McDaniel and David McDaniel, being without children, applied for a child on November 4, 1909, to the Children's Home Society of Pennsylvania, an institution incorporated for the purpose of receiving the custody of, controlling, maintaining, and exercising parental rights over the minor children of indigent, destitute and other parents. The important parts of the application under which children were placed by the home are as follows: The applicants were expected to be kind-hearted, humane, in sufficient financial circumstances to provide suitable food and clothing for the child; to love, cherish, and nurture it in a Christian manner, and to care for and educate the child in a way suitable to their station in life the same as if it were their own. There were two conditions, one of which must be chosen on final settlement of a child: (1) legal adoption; or (2) special contract, which included conditions satisfactory to the association that the child would be tenderly and affectionately nurtured and supported, and given a Christian education and a permanent home until maturity.

Pursuant to this application, the girl, Lulu May Klinger, when but five years of age, entered the McDaniel home. The following January, the McDaniels, being satisfied with the child, entered into an agreement with the home. The material provisions of it, necessary for our decision, are as follows: "It is agreed that, in case of failure to adopt said child, at or after the expiration of ninety days on trial, from the date hereof, then said child continuing in their custody and care, shall be entitled to such interest in their estate, real and personal, as though she were their own natural child and to carry out fully the conditions of placements assented to in making application to the society for a child;

"And it is agreed that, unless this agreement shall become void by mutual consent, or shall be so declared by the first party for cause, said child shall be permitted

to enter, leave and enjoy the home of the second said parties as though she were their own natural child." The remainder of the contract may be found in the reporter's notes.

The court below found: That upon receiving the child into their home, the foster parents gave her the name of Elizabeth May McDaniel and from that time until the girl was married she was maintained, cared for, and educated by them. Mr. McDaniel died in 1911, but Mrs. McDaniel at all times exercised the same control and parental right over the child and exacted the same obedience as though she were in fact her natural child. The child always demeaned herself as such, assisting with the housekeeping and other matters.

The girl, at the age of 18, married Calvin F. Baumgardner. Mrs. McDaniel signed and acknowledged the consent to the marriage as Elizabeth May's mother. She continued to reside with Mrs. McDaniel for some time but left with her husband in 1924 to go to the City of Rochester where he had employment. The family relation was unchanged. Mrs. McDaniel became ill in April, 1927, and wrote to the girl to return home, signing the letter "from mother." She returned, remaining with Mrs. McDaniel, nursing and caring for her until her death, months later. Mrs. McDaniel left no will. Immediately upon her decease, collateral heirs took steps to get her small property, and these proceedings in the court below were instituted to determine the right of the girl to take the estate as a natural child. The court below held that she had such right, and we thoroughly agree with that conclusion.

It is appellant's contention that the conditions set forth in the application should be read into the contract in order to limit it. When so read, the contract with the Children's Home did not extend the girl's right as a natural child beyond maturity. The main conditions of the placement as related to the girl's future were noted in the application. They not only stress maintenance

and education until maturity, but they provide for legal adoption or a special contract under conditions satisfactory to the association. Appellant argues that the intent and meaning of this clause is nothing more than to provide a permanent home until the child should reach its majority.

While it is undoubtedly true that where one contract is dependent on another, the latter should be read into the former (Brown v. Decker, 142 Pa. 640), the conditions specified above indicate that the association looked beyond the maturity of the child; otherwise there would have been no necessity to have provided for the legal adoption of the child. What the association meant by this paragraph was not only the permanent care of the child during its minority, but its position in the family before and after maturity and its interest in their estate as though it were their own natural child. The prior conditions did not control the contract subsequently made under them, although the conditions were broad enough to include all that was stated in the contract. As a natural child, Mrs. McDaniel could have disinherited it by will. There is nothing in the contract that bound her to set apart a portion of the estate to this child. It assumed no higher rights than a natural child, but, unless the contract with the association was changed by a will, it remained in full force and effect at the date of her death.

The Children's Home is like many similar institutions in the Commonwealth which care for destitute or abandoned children. The State has a peculiar interest in this matter as the responsibility for the care and keeping of such waifs rests on the State and it is naturally solicitous for their condition in life. The work of these institutions should be encouraged and, when children come under their care and are placed in a family, such as the application in this case required, the child's interests should be looked after by some one.

We are satisfied that a fair interpretation of the contract shows an intention to look into the child's future so long as it retained the family relation in the sense the agreement and condition of placement indicated. Of course, had the child not remained in their custody and care in the sense intended, it would have lost its right under the contract, for that is one of the express stipulations; but the court below found, and the evidence supported the finding, that it had continued in their custody and care, though married and though for a time she had lived away from her foster mother. The contract in this case is also controlled by Book's Estate, 297 Pa. 543. The only difference is the persons interested in the contract.

The decree of the court below is affirmed.