Lucille E. MILLER, Individually and as next friend of Gertrude A. McAndrew, a minor

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare of the United States.

Civ. A. No. 30246.

United States District Court
E. D. Pennsylvania.

Sept. 19, 1962.

William H. Rivoir, Jr., West Chester, Pa., for plaintiff.

Sullivan Cistone, Asst. U. S. Atty., for defendant.

VAN DUSEN, District Judge.

This action has been brought under 42 U.S.C.A. § 405(g) to review the final decision of the Secretary rendered July 17, 1961, by the Appeals Council, Office of Hearings and Appeals, Social Security Administration (p. 2 of the Record attached to Document No. 4, hereinafter referred to as "R"), insofar as it held that plaintiff, Lucille E. Miller (Mrs. Frank E. Miller), and Gertrude McAndrew, a minor, were not entitled to survivor insurance benefits [1] with reference to the death of Frank E. Miller for any period prior to September 1958. The Appeals Council adopted the inferences, findings and conclusions of the Supplemental Decision of the Hearing Examiner (R., p. 16), modified said decision by allowing benefits from September 1958 onward because of the amended provi-

1. See 42 U.S.C.A. § 402(d) and (g).

sions of 42 U.S.C.A. § 416(e),[2] but held that no benefits were due prior to that date because Gertrude McAndrew was not a "child" under the provisions of 42 U.S.C.A. § 416(h) (2).[3] This determination is challenged in the instant action which is now before the court on cross-motions for summary judgment (Documents Nos. 6 and 7).

Frank E. Miller, a wage earner covered by the Social Security Act, died in 1954 and his wife applied for survivors' insurance benefits, based on an alleged "equitable adoption" of Gertrude McAndrew by wage earner. This claim was consistently rejected.[4] The decision in Kilby v. Folsom, 238 F.2d 699 (3rd Cir. 1956), was agreed by counsel for the applicant and the administrative officials to state the legal principles governing the Miller claim (R., p. 16). Although it recognizes that in some cases a child may qualify for benefits on the basis of equi-

table adoption, the representatives of the Social Security Administration held that this doctrine was not applicable since a necessary requisite for its application (i. e., the existence of a contract or agreement to adopt) was not present.[5]

Since the questions presented herein concern ultimate conclusions to be drawn from evidentiary facts which are not in dispute, this court is not bound by the legal conclusions or "the conclusiveness of the findings" of the Administration. Electric Materials Co. v. Commissioner of Int. Rev., 242 F.2d 947, 949 (3rd Cir. 1957); Kilby v. Folsom, supra, at p. 700; Kilby v. Ribicoff, 198 F.Supp. 184, 186 (E.D.Pa.1961). Cf. Minefield v. Railroad Retirement Board, 217 F.2d 786, 787 (5th Cir. 1954).

The relevant undisputed facts include the following: Gertrude McAndrew is the daughter of Mrs. Miller's brother,

2. 42 U.S.C.A. § 416(e) now states in pertinent part:

"(e) The term 'child' means (1) the child or legally adopted child of an individual, * * *. For purposes of clause (1), a person shall be deemed, as of the date of death of an individual, to be the legally adopted child of such individual if such person was at the time of such individual's death living in such individual's household and was legally adopted by such individual's surviving spouse after such individual's death but before the end of two years after the day on which such individual died or (the date of enactment of this act) * * *."

The amendment was enacted on August 28, 1958, and Lucille Miller adopted Gertrude McAndrew on August 25, 1960 (R., pp. 3–4), thus entitling them both to benefits under 42 U.S.C.A. § 402(d) and (g) from September 1958 onward. No benefits were held payable prior to that date.

3. 42 U.S.C.A. § 416(h) (2) states in part:
"(2) A In determining whether an applicant is the child * * * of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property * * * by the courts of the State in which he (such insured individual) was domiciled at the

time of his death * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child * * * shall be deemed such."

4. The first application was made shortly after the death of the wage earner. In the original Statement of Claim, Mrs. Miller stated that she felt payments should be made on her account because "I intend to raise her as my own child" (R., p. 72). This application was rejected. A new application was filed in November 1958 and benefits were refused by the Bureau by letter of April 22, 1959 (R., p. 82). After a hearing on the application to reconsider, the Hearing Examiner rendered a decision on May 31, 1960, holding that no benefits were due (R., p. 21 et seq.). This holding was reconsidered and affirmed by the Hearing Examiner in a decision dated October 18, 1960 (R., p. 16 et seq.).

5. See decision of May 31, 1960 (R., p. 24) and decision of October 18, 1960 (R., p. 18). The decision of May 31, 1960, states in part:
"Equity is remedial, but equity cannot give effect to what was not a contract of adoption. The ultimate fact is that the father always refused such a legal surrender, and it would be doing violence to the facts to assume the performance of a contract whose existence is specifically denied." (See R., p. 24.)

Eugene McAndrew. She became a member of the Miller household shortly after her birth, when her father permitted his sister to take the child to raise, his wife having died in childbirth. He told his sister, "She's all yours" when she first took the baby (see R., pp. 39 & 40). The statement of the natural father, dated May 22, 1960, reads in part:

"However, I would like to state that I did tell my sister Mrs. Miller that when she took Trudy that I would never take her back and that she was to raise her as her own. My sister and her husband was to treat her as their own which they did; and that statement still goes * * *." (See Exhibit 1, R., p. 16).

Frank E. Miller was the sole support of his foster child during his lifetime (R., p. 45), although her natural father sometimes gave her small gifts (R., p. 45). The child, who was four years old when the wage earner died, called him "Daddy," called Mrs. Miller "Mother" or "Mommie" (R., p. 40), and called her real father "daddy Gene" (R., p. 80). She was known as "Trudy Miller" in the neighborhood, but her real name was used on all legal documents and in other matters (R., p. 41). She was known as "Gertrude McAndrew" in school and in girl scouting activities.[6]

The wage earner referred to the child as "a niece of Lucille Miller" in his income tax returns (R., p. 67).[7] She was

not made a beneficiary of his insurance policy, had no interest in the Miller home, was not made a beneficiary of the estate of the wage earner (R., p. 46),[8] and he made no other provision for her welfare in the event of his death.

When the child was approximately a year and a half old, the Millers first asked Eugene McAndrew for permission to adopt her. This permission was refused (R., p. 40). The only reason given to the Millers by the child's father for his refusal to consent to the adoption was that he wanted Gertrude and his other daughter to have the same surname (R., p. 45).[9] The question of adoption was raised by the wage earner and his wife on subsequent occasions during the wage earner's lifetime, but Eugene McAndrew consistently refused to consent thereto (R., p. 72). His refusal was accepted as binding by the foster parents according to the testimony of Mrs. Miller, who testified that "legal adoption was uppermost in our minds, but of course nothing could be done about it." (R., p. 43). The refusal to allow adoption of the child persisted even after the death of the wage earner.[10]

█ There is substantial evidence in this record to support the finding of the Appeals Council that, prior to the death of Mr. Miller in 1954, there was no agreement by him and his wife to "treat this little girl as their own, fully as much as if she had been their natural, legitimate

6. She did not enter school until after the wage earner's death. Because of the adoption on August 25, 1960, her name at school may have been changed.

7. Even at the time of the hearing, the plaintiff stated that she was referred to as her niece in her will made after the death of Frank E. Miller (R., p. 46).

8. The wage earner died intestate. The widow stated that she and her husband understood that she (Mrs. Miller) would get everything and that " * * * he knew in his heart I would naturally take care of Trudy" (R., p. 46).

9. There may, of course, have been other reasons which were not given to the Millers. Mr. McAndrew being now dead,

no testimony on this point or on other aspects of the case could be given by him if the case were returned to the Secretary.

10. The letter dated May 22, 1960, does not mention adoption. In fact, consent to allow his sister to adopt the child was given by the father in the latter part of 1930, just in time to permit the adoption of August 25, 1960, which brought Mrs. Miller and the child within the provisions of the 1958 amendment of 42 U.S.C.A. § 416(e) just three days prior to the time when no benefits would have been payable to them under that section if the adoption had not taken place. See footnote 2.

child." Kilby v. Folsom, supra, at 701.[11] The Millers did agree with the child's father to raise her as their own and to treat her as their own for purposes of educating and raising her, but the father's consistent refusal to permit her to be adopted and the failure of the decedent to provide for her in his insurance policies and by will support the finding of the Administration that there was no agreement to treat this child as their natural, legitimate child for all purposes, including purposes of inheritance. The facts in this case are far different from those in the Kilby case, in which the natural mother (a stranger to the foster parents) gave the child to the Kilbys under a written agreement that the child was "to be adopted by them as soon as is legally permitted" and also stated "I do hereby relinquish all claim to the said baby girl." The court there found that the Kilbys did many things consistent only with their showing of their intention to create the equivalent of a parent-child relationship between themselves and the child, stating that subsequent conduct is relevant in determining whether a foster parent has bound himself to give a child inheritance rights. Here the foster father did not agree that the child be given inheritance rights. His treatment of the child is as consistent with an uncle-niece relationship or a godfather-godchild relationship as with any other,[12] and his conduct subsequent to the taking of the child into his custody indicates that he had not bound himself to give the child inheritance rights.[13] In addition, no relinquishment of all claims on the child by the natural father has been proved.

The undersigned agrees with counsel for plaintiff that neither equitable nor legal adoption is required by the Kilby case, supra, and it is noted that the Hearing Examiner made clear by this language that the facts did not form a basis for finding a "consensual agreement" that Gertrude McAndrew be treated as a natural child for all purposes (R. 17):

"* * * and what happened does not indicate a purpose to surrender the child, the child to be a child in the foster parents' family with the rights of one who has a contract to be treated as a natural child."

## ORDER

AND NOW, September 19, 1962, after consideration of the foregoing Motions, oral argument, the briefs and reply briefs of counsel, and the record, IT IS ORDERED that:

(1) the defendant's motion for summary judgment (Document No. 6) is granted;

(2) the plaintiff's cross-motion for summary judgment (Document No. 7) is denied; and

(3) this action is dismissed, with prejudice.

---

11. See last paragraph of Decision of July 17, 1961 (R., p. 4) and the next-to-the-last paragraph of the Supplemental Decision of the Hearing Examiner dated October 18, 1960 (R., p. 18), reading as follows:

"The pattern and the background of the Kilby case are not that of the instant case. The distinctions are too great to permit a finding to be made, as in the Kilby case, that either a contract or an agreement can be spelled out that the niece would be treated as the natural child of the deceased Mr. Miller and entitled to inherit property. It must again be emphasized that the relationship in question is with the deceased Mr. Miller and not with Lucille Miller, the present applicant."

See, also, Hilbert v. Flemming, 189 F. Supp. 344, 346 (E.D.Pa.1960), and cases there cited.

12. In addition to all the other distinctions between this case and Kilby, the fact that there was a close blood relationship between Mrs. Miller and the child was noted by the Hearing Examiner (see R., p. 18).

13. See the factual statements, supra, noting especially footnote 8, which shows that the wage earner was aware that the child would not share in his intestate estate and that no will was made because he knew his wife would get everything if he died intestate. There is nothing in the record to show that any attempt was made by Mrs. Miller or anyone else to assert, at the time of the death of the wage earner, that the child was entitled to part of his estate.