Grace KING, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE OF the UNIT-
ED STATES of America, Defendant.

No. 63–C–66.

United States District Court
E. D. New York.

Jan. 3, 1964.

Joseph P. Hoey, U. S. Atty., by Stanley F. Meltzer, Asst. U. S. Atty., for defendant, for the motion.

Austin E. Titus, Jr., Brooklyn, N. Y., for plaintiff, in opposition.

RAYFIEL, District Judge.

This is a motion under Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint herein.

The plaintiff brought this action under Section 205(g) of the Social Security Act, hereinafter called the Act, (Section 405(g) of Title 42 United States Code) to review a final determination of the Secretary of Health, Education and Welfare, which denied mother's benefits to which she claimed she was entitled under Section 202(g) (1) of the Act (Section 402(g) (1) of Title 42 U.S.C.) and Child's Insurance Benefits to which she claimed her granddaughter, Stephanie Richardson, was entitled as an "equitably adopted" child of the deceased wage earner, pursuant to Section 202(d) (1) of the Act (Section 402(d) (1) of Title 42 U.S.C.).

The facts, which are undisputed, follow:

The plaintiff, who had been previously married and had two daughters, married Ashley King, the wage earner herein, in 1945. One of her daughters, Dorothy,

was married to one Ellis Richardson, after her prior marriage to a soldier had been annulled. She had had two children with Ellis when, on August 26, 1949, she gave birth to another, named Stephanie.

Although the birth certificate showed Ellis as the child's father, the plaintiff testified before the Social Security Administration hearing officer that in fact he was not, and that the true father of Stephanie was the aforesaid soldier, Dorothy's first husband. She stated that Ellis refused to acknowledge the child as his, and that both he and Dorothy wanted to offer her for adoption. She further testified that her husband, Ashley King, who had no children of his own, told Dorothy that he would take the child, raise it as his own, and adopt it. Some three weeks after Stephanie was born Dorothy turned her over to Ashley and Grace King, Dorothy's stepfather and mother, who took the child into their home.

They raised the child as their own. Ashley King listed Stephanie as his daughter so that she might receive such union benefits as group health and life insurance. She addressed her grandmother and King as "Mommy" and "Daddy" and considered Dorothy as her older sister. The Kings attempted to register the child at school under their name but, because her birth certificate listed her last name as Richardson, she was registered as Stephanie Richardson. Some time in 1956, when Stephanie was almost seven years of age, the Kings went to an attorney for the purpose of arranging for her formal adoption. However, this was never effectuated for two reasons: first, because Dorothy Richardson did not wish to stir up the past unpleasantness with her husband, Ellis, and second, because Ashley King became ill and was not in a financial position to proceed with the formal adoption. King died on January 4, 1960, but not as a result of the aforementioned illness.

The plaintiff testified that she and her husband felt that a formal adoption was not necessary because, when Stephanie was baptized as a Catholic at the Church of Our Lady of Good Counsel on May 19, 1957, the officiating priest, Father McCabe, spoke to Dorothy Richardson, the child's mother, after which she signed certain documents at the church wherein she agreed that she would not interfere with the child's upbringing. The Baptismal Certificate, however, shows the child's name to be Stephanie Richardson and the names of her father and mother to be Ellis and Dorothy Richardson.

On the basis of these facts the Social Security Administration denied Child's Insurance Benefits to Stephanie and Mother's Insurance Benefits to the plaintiff. Upon reconsideration the decision was affirmed, whereupon the plaintiff requested a hearing. Hearings were held before a Hearing Officer on August 15 and August 22, 1962 at which both the plaintiff and the child testified. In a decision dated September 6, 1962 the hearing officer denied benefits to the plaintiff and Stephanie. The plaintiff then requested a review of the hearing officer's decision by the Appeals Council, which affirmed it. The plaintiff thereupon commenced this action.

■ Since the facts herein are not in dispute the provision of Section 205(g) of the Act (Section 405(g) of Title 42 U.S.C.) to the effect that the "findings of the Secretary *as to any fact,* if supported by substantial evidence, shall be conclusive" (emphasis mine) is not applicable. · As was stated in Kilby v. Folsom, 3 Cir., 238 F.2d 699, at page 700, "The evidentiary facts are not in dispute. The question concerns the conclusion to be drawn from the facts. Since the problem deals with the ultimate conclusion and not evidence, the usual rules about conclusiveness of findings by the triers of fact do not apply. Curtis Co. v. Commissioner, 3 Cir., 1956, 232 F.2d 167; Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592. Nor is there any question of particular administrative competence involved, for the problem is a legal one."

The problem in the instant case, too, is a legal one. Section 202(d) of the Act (Section 402(d) of Title 42 U.S.C.) provides that, "Every child (*as defined in section 216(e) of this title*) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, * * * shall be entitled to a child's insurance benefit * * *." (Emphasis supplied.)

Section 216(e) of the Act (Section 416 (e) of Title 42 U.S.C.) defines a child as follows: "The term 'child' means (1) the child or legally adopted child of an individual, * * *." That Section then gives the tests for the determination of family status, and paragraph (h) (2) thereof provides as follows: "In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the *Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death* * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." (Emphasis supplied.)

Therefore the question to be determined is: would Stephanie, under the law of the State of New York, be entitled to share in the estate of Ashley King.

▇ Adoptions, unknown at common law, can be consummated only as prescribed by statute. See Adoption of Sanderson, Co.Ct., 143 N.Y.S.2d 520; Matter of Thorne's Will, 155 N.Y. 140, 143, 49 N.E. 661, 662; Matter of Ziegler, 82 Misc. 346, 350, 143 N.Y.S. 562, 565, Affirmed 161 App.Div. 589, 146 N.Y.S. 881; In re Bamber's Estate, 147 Misc. 712, 265 N.Y.S. 798; In re Browning's Estate, 153 Misc. 564, 276 N.Y.S. 267. Concededly the wage earner failed to comply with the provisions of Article VII of the Domestic Relations Law of the State of New York, which governs the procedure for adoptions. It is the contention of the plaintiff that Stephanie was "equitably" adopted by him and that therefore she is entitled to Child's Benefits.

The plaintiff cites the case of Kilby v. Folsom, supra, in support of her position. In that case one Ralph Kilby and his wife obtained possession of an infant child shortly after its birth. The mother of the child signed an agreement which provided that the child had been given to the Kilbys "to be adopted by them as soon as is legally permitted" and that she relinquished all claims she had to her. The Kilbys sent out announcements of the child's birth as if she had been born to them. Mr. Kilby made her a contingent beneficiary of the proceeds of his life insurance and claimed her as a dependent "daughter" in his income tax returns. Adoption proceedings were commenced but had not been completed at Mr. Kilby's death.

The court there found, 238 F.2d at page 701, that "the foster parents agreed to and did treat this little girl as their own, fully as much as if she had been their natural, legitimate child. And being treated as a natural, legitimate child necessarily involves the privilege of sharing in the estate of the parent, unless, of course, the parent by will disinherits the child".

The facts in that case were very much stronger than those in the case at bar. Here, Stephanie is the child of the wage earner's stepdaughter, who would have abandoned her if the wage earner and his wife, the child's grandmother, had not volunteered to take and care for her. The parties entered into no written agreement. There is nothing more to indicate the purpose of the delivery of Stephanie by her mother to the Kings than the testimony of the plaintiff and Dorothy Richardson's statement in the record (Exhibit 13) that "I gave her to my mother and stepfather with the intention that they would adopt her." This, it

may be added, is in conflict with the original statement made by the plaintiff to the Social Security Administration, (Exhibit 5) in which she said: "My daughter and I did not discuss legal adoption at first," and further, "We didn't think of adopting her legally at first. When the baby was a couple of months old we started to think about it. We planned to share our property with her when we died." Nothing was done respecting the adoption for almost seven years when the plaintiff and her husband visited a lawyer to discuss the adoption with him. Even at that late date nothing was done. No agreement was drawn between the parties concerned, nor was application made to the Surrogate to formalize the adoption. The reason given by the plaintiff in her statement (Exhibit 5) for her failure so to do appears reasonable, namely, "We never continued proceedings (for adoption) because while my daughter was willing to give up the child, *she didn't want to stir up her past with the child's father*." (Matter in parenthesis and emphasis added.) It is inconceivable to me, however, that the plaintiff and her husband, the wage earner herein, could have thought, as she testified they did, that a formal adoption was not necessary because Dorothy had signed certain papers at the church when Stephanie was baptized. The record discloses (Exhibit 6) that Father McCabe, who baptized the child, did not recall whether he ever spoke to the child's mother. He did state, however, that he was convinced that neither her mother nor father would ever interfere in the upbringing of the child. It must also be remembered that the Baptismal Certificate shows the child's name to be Stephanie *Richardson* and lists her mother and father to be *Dorothy* and *Ellis Richardson*. When Stephanie was turned over to the Kings no agreement was entered into to adopt her. Dorothy did not make that a condition for her turning the child over to them. The testimony and exhibits show that she would have abandoned her if the Kings had not agreed to take and care for her. Ellis,

her husband, refused to acknowledge the child as his own, despite the fact that she was born while he and Dorothy were living together as husband and wife. The instant case is less persuasive of equitable adoption than In re Bamber's Estate, supra, in which the Surrogate of Monroe County, New York, refused to recognize, as an adopted child, one who had been taken into the decedent's home many years before pursuant to a written agreement in which the child was to be provided with "board and lodging & clothing" and was "in every respect" to be brought up "as my own child." The court said at page 800 of 265 N.Y.S., "At no time or place, therefore, did this claimant acquire, as regards either this testatrix, or her husband, the legal status of a prospective heir, who, in the case of intestacy, could legally inherit from either of them, under the statute."

Nor is it as strong as Spiegel v. Flemming, D.C., 181 F.Supp. 185, in which the court refused to grant Child's Benefits to a child who had been turned over to a wage earner and his wife by a welfare agency under an agreement containing a proviso for a six months waiting period before the adoption proceeding could be commenced, during which period the wage earner died. The court there said, 181 F.Supp. at page 188, "There can be no doubt that in the case at bar, the Spiegels intended to treat the child as their own and to adopt him. The evidence discloses, however, that at the time of the wage earner's death plaintiff and her husband were not bound to adopt the child. Nor was the placement agency bound to relinquish the child to the Spiegels. Moreover, at the time of the wage earner's death, Ted E. Spiegel was not a child within the meaning of Section 216(e) then in effect and at that time he was not entitled to share in the wage earner's estate under the Ohio law governing the inheritance of personal property."

■ I therefore find that there was not an equitable adoption of the child, Stephanie, by the wage earner, and consequently she is not entitled to Child's

Benefits and the plaintiff is not entitled to Mother's Benefits. The defendant's motion for summary judgment is granted.

Settle order on notice.