**Apolonia CRUZ, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare of the United States, Defendant.**

**No. 64–C–295.**

United States District Court
E. D. Wisconsin.

June 30, 1966.

Harvey L. McCormick and Theodore W. Coggs, Milwaukee, Wis., for plaintiff.

James B. Brennan, U. S. Atty., by Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

OPINION AND ORDER

REYNOLDS, District Judge.

This is a suit under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a "final decision" of the Secretary of Health, Education and Welfare. The "final decision" in question consists of a decision of May 26, 1964, by a hearing examiner of the Social Security Administration, which became the Secretary's "final decision" when, on October 5, 1964, the Appeals Council denied plaintiff's request for review. Having thus exhausted all her administrative remedies, the plaintiff commenced this action on October 15, 1964.

The proceedings leading to the request for judicial review in this case are as follows: Silverio Baez, the individual on whose earnings record the benefits are claimed, died domiciled in Indiana on December 4, 1958, an insured individual under the terms of the Act. On December 8, 1958, the plaintiff, using the name Apolonia L. Baez, filed an application for survivors insurance benefits. This application was disallowed administratively on March 18, 1959, and was not appealed by her. The children for whom she claimed benefits in this application were: (1) William Baez, born September 7, 1954; (2) Carlos Baez, born July 10, 1955; (3) Angel Baez, born June 27, 1956; and (4) Roberto Baez, born November 23, 1957. On April 17, 1959, four months after the wage earner's death, a fifth child, Carmen, was born.

On March 18, 1959, an application for survivors insurance benefits was filed on the wage earner's earnings record by Epifania Diaz on behalf of herself as widow and Hidalisa as a legitimate child born of Epifania's valid undissolved ceremonial marriage to the wage earner

in Puerto Rico on March 12, 1947. This application was allowed and benefits were paid to her beginning December 1958.

The application involved in this case is a second filed by Apolonia (Baez) Cruz on February 7, 1962, on behalf of the five children referred to above, in which Apolonia claims that the deceased was the father of her children. This application has been denied in the aforementioned administrative proceedings. It has been held below that Apolonia's children were not children of the deceased wage earner, Silverio Baez, within the meaning of the amended Act. In this review proceeding, the parties have filed cross-motions for summary judgment.

██ The background facts are not substantially in dispute. The deceased wage earner was validly married in Puerto Rico to Epifania Diaz on March 12, 1947. A son was born of this marriage on December 23, 1948. This marriage was never dissolved. It appears, moreover, that both the fact of this marriage and the fact that it was never dissolved were known to Apolonia and Silverio at all times material to the controversy before the court.[1]

Apolonia and Silverio came separately to Indiana from Puerto Rico in 1953. Shortly after their arrival in Indiana, Apolonia and Silverio began living together and continued such relationship until Silverio's death on December 4, 1958. During this period, they were known to their friends as husband and wife. Four of the five child-claimants were born to Apolonia between 1954 and the date of Silverio's death. The fifth child, one Carmen Baez, was born some four months after Silverio's death.

As a matter of natural fact, if not of law, these five youngsters were the children of Silverio. The birth certificates of each of the child-claimants indicate that their surname is Baez and that their father is one Silverio Baez. Each time Apolonia had a child, Silverio took her to and from the hospital. Silverio cared for and supported each of the four children born to Apolonia during his lifetime as his own. He referred to them publicly as his children and named them as his children in insurance polices taken out on his life. He declared them to be his children when he claimed them as dependents in his income tax returns.[2]

The Lake Superior Court of Lake County, Indiana, at the termination of certain ex parte proceedings entitled IN THE MATTER OF THE PETITION OF CARMEN L. BAEZ, WILLIAM BAEZ, CARLOS BAEZ, ANGEL M. BAEZ and ROBERTO BAEZ, by their next friend APOLONIA L. BAEZ, TO ESTABLISH THE RELATIONSHIP OF SILVERIO BAEZ, DECEASED, WITH THE PETITIONERS, entered an order, dated January 24, 1964, a portion of which reads as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

"1. The decedent left surviving him as his sole and only heirs at law

---

1. There is considerable evidence in the record which supports the conclusion that Apolonia was unaware that the marriage of Silverio and Epifania was never dissolved. There is, however, substantial evidence in the record which supports the hearing examiner's conclusion that Apolonia was aware of this fact. We therefore accept his finding of fact.

2. A copy of the 1956 Federal Income Tax Return of Silverio Baez was submitted as an exhibit at the oral hearing. It lists the three children born to Apolonia prior to 1957 as dependents. The hearing ex-

aminer states in his decision that Silverio listed four of the child-claimants as dependents on an income tax return. The 1956 Federal Income Tax Return is the only return of Silverio submitted by the Secretary to this court in the certified copy of the transcript of the record. Either the hearing examiner committed factual error in stating without qualification that Silverio listed four child-claimants as dependents, or the Secretary has not complied with 42 U.S.C. § 405(g), in that he has failed to submit to this court a material part of the record below.

the following persons as set forth below:

| NAME OF HEIR | RELATIONSHIP |
| --- | --- |
| Carmen L. Baez | Child |
| William Baez | Child |
| Carlos Baez | Child |
| Angel M. Baez | Child |
| Roberto Baez | Child" |

The issue to be decided is whether the claimants are entitled to child's insurance benefits under § 202(d) of the Social Security Act, as amended, 42 U.S.C. § 402(d), on the wage record of Silverio Baez, deceased. This will depend on whether these claimants, upon the facts of this case, are the children of the wage earner within the meaning of the Social Security Act. All other factors of entitlement have been met. Section 216(h) (2) of the Act, as amended, 42 U.S.C. § 416(h) (2) (A) provides:

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate *personal* property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * * *. *Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.*" (Emphasis added.)

Silverio Baez died domiciled in the State of Indiana. Claimant-youngsters qualify as children of Silverio only if they would be entitled to children's shares in his intestate personal estate under the laws of Indiana, had Silverio died possessed of a personal estate.

Prior to January 1, 1958 (when common law marriage was abolished by statute), Indiana permitted two types of marriage—ceremonial marriage and common law marriage. Apolonia and Silverio were never ceremonially married. Substantial evidence supports the hearing examiner's conclusion that they never contracted a valid common law marriage. The claimant-youngsters, therefore, are illegitimate.

### I.

Defendant contends that under the Indiana law of intestate succession, there are only two ways by which an illegitimate child may inherit from his father as though he were a legitimate child. Section 6–207(b) of Burns' Indiana Statutes Annotated provides:

"For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child and acknowledges the child to be his own."

Indiana courts have interpreted the term "established by law" to mean established in a court of law. In Thacker v. Butler, 134 Ind.App. 376, 184 N.E.2d 894, 897 (1962), the court said:

"We believe it was the intent of the legislature by the use of the phrase, 'established by law', in Item 1 * * * to mean that the paternity of such child must be first determined in a judicial proceeding brought for that purpose in a court of law having jurisdiction to determine such issue, during the lifetime of the putative father, in order for an illegitimate child to inherit from such father. Acknowledgment alone no matter how positive or often is not sufficient under our present law."

In the instant case, the deceased wage earner, Silverio, was not involved in any legal proceeding relating to paternity of the claimant-youngsters during his lifetime. He could not, under the circumstances, marry the claimants' mother, Apolonia. Therefore, under the Indiana

law of intestate succession (considered apart from any other basis of entitlement under Indiana law), claimant-youngsters would not have been entitled to any part of Silverio's intestate estate had he such an estate. Since this is true, defendant contends, and the hearing examiner has held, that claimant-youngsters are not children of Silverio within the meaning of 42 U.S.C. § 402(h) (2) (A) and, therefore, are not entitled to child's insurance benefits under 42 U.S.C. § 402(d) on Silverio's wage record.

We are of the opinion that the final decision of the Secretary to deny claimant-youngsters child's insurance benefits, represented in this case by the opinion of the hearing examiner, must be reversed for the reason that such denial resulted from application to the facts in this case of an erroneous legal standard. The proper legal standard is not whether under the Indiana law of intestate succession claimant-youngsters would be entitled to children's portions of Silverio's intestate estate. It is whether under any Indiana law, including that of intestate succession, claimant-youngsters would be entitled to children's shares in his intestate personal estate.

To illustrate this distinction in legal standards, no better case could be examined than that of Kilby v. Folsom, 238 F.2d 699, 60 A.L.R.2d 1065 (3d Cir. 1956). Ralph M. Kilby and his wife Jean deeply desired a child. They had the opportunity through a physician friend to adopt a newborn babe. Its mother turned the infant over to Mrs. Kilby.

There was no common law adoption procedure in Pennsylvania, the State of the Kilbys' domicile. The only possible method by which an infant could be adopted and thereby become entitled to a child's share of the intestate estate of his new father under the law of intestate succession of the State of Pennsylvania was through formal adoption proceedings prescribed by statute. Such proceedings were never completed prior to Mr. Kilby's death.

The Kilbys, nevertheless, did many things consistent with a showing of their intent to create the equivalent of a parent-child relationship between themselves and the infant. The infant's natural mother signed a paper at the time she gave Mrs. Kilby the infant. In this paper she stated that the infant had been given to the Kilbys "to be adopted by them as soon as is legally permitted" and gave up all claims she had to the child. The Kilbys immediately sent out announcements of the infant's birth, just as though Mrs. Kilby had borne her. They cared for and supported the infant as their own. Mr. Kilby made the infant a contingent beneficiary of his life insurance policies. He claimed her as a dependent "daughter" in his income tax return and gave her his own surname. It will be observed how the actions of Mr. Kilby toward his "daughter" closely parallel the aforementioned actions of Silverio toward his "children."

The issue before the court in the Kilby case was whether the infant was entitled to child's insurance benefits on the earnings record of Mr. Kilby under the Social Security Act. This depended upon whether the infant was a "child" of Mr. Kilby within the meaning of 42 U.S.C. § 416(h) (2) (A).

The circuit court, in reversing the district court which had affirmed the final decision of the Secretary, held that the paper signed by the infant's mother coupled with the Kilbys' subsequent conduct constituted a contract to adopt, a contract to treat the infant as the Kilbys' natural child. Thus, the infant had a contractual right under the law of the State of Pennsylvania to a child's portion of Mr. Kilby's estate upon death unless disinherited by will. But, the Secretary argued, the Social Security Act requires that the infant be entitled to take by intestate succession. Admittedly the infant had no rights under Pennsylvania's law of intestate succession as she was never formally adopted. The court answered, at page 702, applying the legal

standard which the Secretary in the instant case has neglected to apply:

"* * * Then it is suggested that the rights of one who has a contract to be treated as a natural child are not the same as the natural child's right upon the death of a parent intestate. The rights of one come from a contract; the other by operation of law. But here, too, 'devolution' is not a word of art unless a legislature has made it so. * * * The meaning is not limited to intestate succession and we do not see that it needs to be in this case. If this child, as we have worked out above, is entitled to rights in the decedent foster father's estate, we do not think it matters for her standing in this case whether those rights are worked out on the theory of a contractual right or a share in distribution."

It should be noted that under 42 U.S.C. § 416(h) (2) (A), an applicant need only have the same status relative to the taking of intestate *personal property* as a child in order to be deemed such. The Act does not require that such individual have any right to share in the wage earner's real property. It does not, therefore, require that he have a child's status with respect to real property, or that he have a child's right to *inherit* pursuant to the intestacy laws any property from the wage earner.

Having ascertained the correct legal standard, it now becomes necessary to inquire whether there is any Indiana law under which claimant-youngsters would be entitled to children's shares in Silverio Baez's intestate estate had he died possessed of one. Several sections of the Indiana statutes are relevant:[3]

"3–624. Obligations of parents.— The parents of a child born out of wedlock and not legitimated, hereinafter referred to in this act [§§ 3–623—3–655] as the 'child,' owe the child necessary maintenance, medical care, education, and support, and are liable for the child's funeral expenses. The obligations imposed upon parents to support their legitimate children are hereby imposed upon the parents of children born out of wedlock [Acts 1941, ch. 112, § 2, p. 301.]"

"3–629. Liability of father's estate— Rights of widow—Limitations upon rights.—The obligation of the father, where his paternity has been established during his lifetime by judgment of a court of competent jurisdiction, *or where his paternity has been acknowledged by him in writing, or by the part performance of his obligations, is enforceable against his estate* in such an amount as the court may determine, having regard to the age of the child, the ability of the mother to support it, the amount of the property left by the father, the number, age, and financial condition of the lawful issue if any, and the rights of the widow, if there be a widow: Provided, That in the enforcement of such obligation against estates the amount allotted to, or on behalf of, any child born out of wedlock shall never be in any event greater than the amount that could have been allotted to, or on behalf of, such child as its distributive share had it been born in wedlock: Provided, further, That in no instance shall the provisions of this section be construed so as to impair the rights of a surviving wife to share in the estate of her deceased husband or in any way to amend the laws of descent. The court may in its discretion direct the discharge of the obligation of the estate by periodical payments or by the payment of a lump sum. [Acts 1941, ch. 112, § 7, p. 301.]" (Emphasis added.)

■ We note that § 3–624 places upon the parents of illegitimate children not only the obligation to support, maintain, educate, provide medical care and funeral expenses for such children, but also specifically imposes upon them the very

---

3. There is no discussion of these sections in the hearing examiner's decision beyond the statement that they are irrelevant.

same obligations as the State of Indiana imposes upon parents to support their legitimate children. The presence of such a statutory obligation gives rise to a restitutional right in the illegitimate children themselves to enforce their parents' statutory duty. It is apparent, therefore, that the benefits which an illegitimate child may obtain by statutory right from his parents during their lifetime under Indiana law are exactly the same as those to which a legitimate child is entitled by statutory right.

■ Section 3–629 makes the father's estate liable for the obligations imposed upon him by § 3–624. His illegitimate children have a right to enforce this statutory obligation against his estate. These children, therefore, have a statutory right to a portion of their father's estate, just as the children in the *Kilby* case have a contractual right to a portion of such estate. This statutory right is, if anything, stronger than the contractual right of *Kilby* and must be accorded at least equal status, for statutory rights have their origin in the sovereign itself while true contractual rights arise from the mutual consent of the parties.

The portion of his father's estate recoverable by an illegitimate child under § 3–629 is limited to that amount which he would have been entitled to as his distributive share had he been born in wedlock, i. e. to a child's portion of the estate under the laws of intestacy. We feel that the portion of his father's estate to which an illegitimate child would become entitled under § 3–629 would in most instances be as great as the portion to which he would be entitled under the laws of intestacy had he been born in wedlock. At least that is so in this case. We are all aware of the high cost of child support, medical care, and education today.

Certainly there could be instances where, under the particular facts of the case, an illegitimate child could receive less under § 3–629 than he would receive under the laws of intestate succession were he legitimate. If, for example, his father were very rich, or his mother very wealthy and his father poor, the amount to which he would be entitled under § 3–629 might be less than his distributive share were he legitimate.

Section 416(h) (2) (A) of 42 U.S.C., however, requires only that the particular youngsters before the court " * * * have the same status relative to taking intestate personal property as a child * * *." Thus the question we are faced with is whether under § 3–629, upon the facts as found below, Silverio's youngsters would have been entitled to receive the same portion of his intestate personal estate as they would receive had they been legitimate under the law of intestate succession.

Silverio left no probate estate. He died with one legitimate child. He was a poor man. Apolonia is poor. His approximate yearly earnings as indicated by an income tax return were $5,000.00. Had he left a probate estate, it would have been a small one. It is inconceivable, on the aforementioned facts, that Silverio's five illegitimate children would have been entitled individually to a lesser portion of his estate under § 3–629 than they would have under the laws of intestacy had they been legitimate.

Not every illegitimate child is entitled to a portion of his father's estate under § 3–629. In order to qualify, his father's paternity must be established during his lifetime—

" * * * by judgment of a court of competent jurisdiction, or where his paternity has been acknowledged by him in writing, or by the part performance of his obligations, * * *."

The four claimant-youngsters born before Silverio's death easily meet this qualification. Without question Silverio partly performed his obligation to them during his lifetime. Silverio's name appears on their birth certificates. He took Apolonia to the hospital when they were born. He brought them home with Apolonia after they were born. He gave them his surname and referred to them publicly as his children. He supported and cared for them from their birth un-

til his death. Their names appear in his insurance policies. He listed three of them as dependents on his federal income tax return (the fourth child was not yet born at the time the tax return was made out).

■ For the foregoing reasons, we decide that the four claimant-youngsters born before Silverio's death are entitled to child's insurance benefits under 42 U.S.C. § 402(d). They are children of the wage earner within the meaning of 42 U.S.C. § 416(h) (2) (A).

## II.

If we use another line of legal reasoning, we find that not only the four child-claimants born during Silverio's lifetime but also the one posthumous child-claimant Carmen may be entitled to child's insurance benefits under 42 U.S.C. § 402 (d).

Plaintiff contends that the aforementioned ex parte order of the Lake Superior Court, a probate court of Lake County, Indiana, declaring the claimant-youngsters to be children and the sole heirs at law of Silverio Baez, is binding upon the Secretary-defendant under principles of res judicata or collateral estoppel. Plaintiff takes the position that this order was in rem and thus binding upon the whole world, including the Secretary-defendant.

■ Assuming but not deciding that the order in question was in rem, it is nevertheless ineffectual to bind the Secretary-defendant under principles of res judicata or collateral estoppel. The Secretary-defendant neither was nor could he properly have been a party to the probate court proceedings. Any possible debt owing by the Secretary-defendant to the claimant-youngsters in the form of child's insurance benefits was not a res which had actually been seized by that court. Fennell v. United States, 67 F.2d 768 (5th Cir. 1933). A comment by the United States Supreme Court in Scott v. McNeal, 154 U.S. 34, 46, 14 S.Ct. 1108, 1112, 38 L.Ed. 896 (1894), is apropos:

"Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who had notice, either actually or by the thing condemned being first seized into the custody of the court. * * *"

Since the Secretary is not bound by the decision of the Indiana Probate Court under principles of res judicata or collateral estoppel, may he summarily disregard that adjudication and proceed to redecide de novo the issue of whether the five claimants are children within the meaning of the Social Security Act, thereby ignoring what a State court of Indiana has already determined on the spurious ground that he was not a party to such proceedings?

Social Security benefits are purely statutory. Congress has laid down a specific standard to be applied by the Secretary in determining the State law material to the question of child's status under the Act. Section 416(h) (2) (A) of 42 U.S.C. requires that the Secretary apply such law as the "courts of the State" of the insured's domicile at the time of his death would apply in determining the issue of child's status. As the court said in Collins v. Celebrezze, 250 F.Supp. 37, 41 (S.D.N.Y.1966):

"It seems to me beyond cavil that the initial inquiry of the Secretary as to what the courts of the state 'would find' with respect to an issue of marital status must necessarily focus upon whether or not the courts of the state have already made an adjudication on that precise issue. If, as here, the state courts have decided the issue the Secretary cannot summarily disregard that adjudication and proceed to re-decide de novo the issue of status. He cannot ignore what the state courts already determined on the spurious ground that he was not a party to the proceedings."

■■ The Social Security Act itself, rather than any principle of res judicata or collateral estoppel, compels the Secretary to give effect to a State court adjudication of child's status unless such extraordinary facts and circumstances

are shown as would impel the State courts to find that the prior adjudication has no force or effect. The Secretary may not under the Act try de novo the issue of child's status upon the theory that a court of the wage earner's domicile has made a mistake or should have interpreted or applied its law differently. He may only disregard a State court adjudication when it is shown that upon the evidence adduced before him the State courts would refuse to give force and effect to the prior State court decision in appropriate proceedings under State law. Collins v. Celebrezze, supra, at 41.

In the case at bar, the hearing examiner summarily disregarded the decision of the Indiana Probate Court and tried de novo the issue of the child's status of Silverio's five children. The sole comment he makes in his written decision touching upon the Indiana Probate Court decision points up his attitude of summary disregard:

> " * * * While it is true that claimant's attorney indicated in his brief that he and another attorney obtained a decree or order from a County Court in Indiana on January 24, 1964 that the deceased wage earner 'left surviving him as his sole and only heirs at law' the five child-claimants herein. This exparte 'order', obtained more than five years after the death of the wage earner, is believed to be nothing more than a frivolity on the part of claimant's attorneys and is not believed to establish anything anywhere, including Indiana, notwithstanding the invocation of the U. S. Constitution in the claimant's behalf. * * * "

The hearing examiner nowhere finds such fraud, collusion, mistake of fact, newly-discovered evidence, or other defect as would upon any proper theory induce an Indiana court to set aside the Indiana Probate Court decree upon direct or collateral attack. Until such a finding is made, it cannot be held that even the posthumous child-claimant, Carmen Baez, is to be denied child's insur-

ance benefits upon the earnings record of her father Silverio.

For the foregoing reasons plaintiff's motion for summary judgment is granted, and the Government's cross-motion for summary judgment is denied.

It is ordered that the decision of the Secretary denying child's insurance benefits to William, Carlos, Angel, and Roberto Baez be and the same is hereby reversed, and the case as to these child-claimants is remanded solely for a determination of the claimants' benefits.

It is further ordered that the decision of the Secretary denying child's insurance benefits to the posthumous child-claimant Carmen Baez be and the same is hereby reversed, and the case as to this child-claimant is remanded for further proceedings consistent with the legal standards set forth in this opinion.